554 A.2d 550

## COMMONWEALTH of Pennsylvania

### v.

## Carlton HUNTER, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 28, 1988.

Filed Feb. 23, 1989.

608

Irene H. Cotton, Philadelphia, for appellant.

Norman Gross, Assistant District Attorney, Philadelphia, for Com.

Before MONTEMURO, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for third degree murder and various weapons offenses. Appellant raises six claims of trial court error, as well as four claims of ineffective assistance of counsel. For the reasons that follow, we affirm the judgment of sentence.

On October 24, 1986, following a bench trial, appellant was convicted of murder in the third-degree, possession of an offensive weapon, and possession of an instrument of crime. Post-verdict motions were filed and denied. On December 22, 1987, appellant was sentenced to an aggregate term of six-to-fifteen-years imprisonment. Appellant's motion to modify sentence was filed and denied, and this appeal followed.

■ Appellant first contends that the evidence was insufficient to support the verdict. The well-established standard for reviewing sufficiency claims was recently stated by our Supreme Court:

[W]hether, viewing the evidence in the light most favorable to the Commonwealth [as verdict winner], and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered....

*Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986) (quoting *Commonwealth v. Harper,* 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979) (citations omitted)).

The trial court aptly summarized the evidence as follows:

On the evening of December 24, 1980, Dwayne Brown [the victim] and a friend, Paul McLaurin, entered the dry-cleaning establishment at 24th and Somerset where defendant was employed. According to McLaurin, Brown had invited him to a party at the cleaners, which was a disguise for an illegal numbers operation. When the two men entered they encountered the defendant and conversed briefly with him and others before returning outside. Shortly thereafter another acquaintance, Eddie Capel, who had also been at the "party," joined them outside and began a conversation. A few minutes later, defendant appeared outside with a shotgun, said something to Brown, and shot him once in the chest. When the police arrived, defendant was gone and McLaurin was huddled over his injured friend.

A stipulation established that an autopsy had determined that Brown died of a gunshot wound to the chest, fired from between two and eight feet away from the

deceased. Also stipulated was the fact that the gastric alcohol content of Brown's blood exceeded the legal limit for driving while intoxicated.

The Commonwealth also presented [two statements that had been taken from defendant]. In each statement defendant's story was essentially the same:

On the evening of December 24, 1980, he was employed at Sonny Booth's cleaners at 24th and Somerset, which was indeed a "front" for a gambling operation. Brown and McLaurin came in to see Sonny, and Brown became angry when the defendant informed the men that Sonny was not there. Brown lunged at the defendant, and as McLaurin pulled him away from defendant and toward the door, defendant saw what appeared to be the handle of a gun protruding from Brown's pants. As McLaurin finally pulled Brown out of the door, Brown threatened to kill defendant. Defendant, then fearing for his own safety, sent his friend Rick Thomas out to his car to get a gun he was keeping there for a friend. While Thomas was gone, defendant told Eddie Capel, who had just arrived, of the confrontation, and Capel went outside to attempt to calm Brown. Thomas then returned with the gun, and, when defendant heard the men outside begin to argue, he took a drink of whiskey and hid in the outside cellarway with the gun. When Brown saw defendant peeking around the corner he took a step in defendant's direction and reached into his shirt. Defendant, believing that Brown was reaching for a gun, emerged from the cellarway with his own gun and shot Brown.

*    *    *    *    *    *

The Commonwealth's final witnesses were Philadelphia Police Officer James Jackson and Detective Michael Cubbage, who were called to the shooting scene. When they arrived they found the deceased on the ground with McLaurin hovering over him, refusing to leave until the police wagon arrived. After attending to Brown the

officers arrested McLaurin. They did not find any weapons on Brown or McLaurin.

\* \* \* \* \* \*

The final defense witness was the defendant.... In addition to relating the events as they appeared in his prior statements, defendant testified that he had known the deceased and McLaurin from the neighborhood. He had believed the object in Brown's pocket was a gun because the deceased had a reputation for carrying a gun and for robbing people. When he went outside and hid in the cellarway, he heard Brown say, "There's that m---f--- right now. I'll blow his m---f--- brains out right now!" And for that reason he perceived that his life was in immediate peril.

Trial Court Opinion at 2–5. Appellant specifically argues that there was insufficient evidence of malice to support the murder verdict. We disagree. "In order for a willful or intentional killing to constitute murder, the Commonwealth must establish malice beyond a reasonable doubt." *Commonwealth v. Carbone*, 375 Pa.Super. 261, 544 A.2d 462, 466 (1988) (en banc). *See also Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Thomas*, 403 Pa. 553, 170 A.2d 112 (1961).[1] Malice is the element that distinguishes murder from manslaughter. *See Commonwealth v. Weinstein*, 499 Pa. 106, 115, 451 A.2d 1344, 1348 (1982).

Malice " 'comprehends not only ill will, but every case where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.' " *Commonwealth v. Carbone, supra* 375 Pa.Super. at 271, 544 A.2d at 466 (quoting

---

**1.** The Crimes Code provides in relevant part that,

All other kinds of murder shall be murder of the third degree. 18 Pa.C.S.A. § 2502(c). Our Supreme Court has noted that this definition "incorporates the common-law concept of malice as an element of murder of the third degree." *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 556, 388 A.2d 1068, 1070 (1978), *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978).

*Commonwealth v. Drum,* 58 Pa. 9, 15 (1868)). *See also Commonwealth v. Buzard,* 365 Pa. 511, 76 A.2d 394 (1950). Malice may either be expressed by the defendant or "implied from his words or conduct and the attendant circumstances." *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 556, 388 A.2d 1068, 1070 (1978), *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). One such circumstance is the use of a deadly weapon. "[I]t is well settled that the intentional use of a deadly weapon on a vital part of the body raises a permissible inference of malice." *Commonwealth v. Carbone, supra* 375 Pa.Super. at 272, 544 A.2d at 467. *See also Commonwealth v. Hinchcliffe, supra,* 479 Pa. at 554, 388 A.2d at 1070.

Here, the evidence summarized above was clearly sufficient to support a finding of malice. The court, sitting as fact finder, apparently chose to disbelieve appellant's testimony on the issue of self-defense, and drew an inference of malice from the use of the shotgun and the attendant circumstances. It is settled, of course, that the trier of fact is free to believe all, part, or none of a witness's testimony. *See Commonwealth v. Carbone, supra* 375 Pa.Super. at 264, 544 A.2d at 463. *See also Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986); *Commonwealth v. Curry,* 318 Pa.Super. 490, 465 A.2d 660 (1983). Accordingly, we conclude that the Commonwealth met its burden of proving malice beyond a reasonable doubt.

■ Appellant's next two arguments are inter-related, and derive from the court's rejection of his self-defense theory. Appellant frames these issues as follows:

1. Does an employee in his place of business have a duty to retreat from mortal danger when otherwise he would be justified in defending himself?

2. Is there ever a duty to retreat when there is no safe avenue of escape?

Brief for Appellant at 2. The thrust of appellant's argument is that the trial court misapprehended the law regarding appellant's duty to retreat. Because the court misun-

derstood appellant's duty to retreat, appellant maintains that the court in effect "misinstructed itself" and therefore improperly found that the Commonwealth met its burden of showing beyond a reasonable doubt that the killing was not in self-defense.[2]

■ In order to negate a claim of self-defense, the Commonwealth must establish any one of the following elements beyond a reasonable doubt: (1) that appellant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, (2) that appellant provoked the use of force, or (3) that appellant had a duty to retreat and that retreat was possible with complete safety. 18 Pa.C.S.A. § 505(b)(1). *See also Commonwealth v. Carbone, supra* 375 Pa.Super. at 275, 544 A.2d at 469; *Commonwealth v. Zenyuh*, 307 Pa.Super. 253, 257, 453 A.2d 338, 340 (1982). With regard to the duty to retreat, the Crimes Code further provides that a person "is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor...." 18 Pa.C.S.A. § 505(b)(2)(ii)(A).

■ Here, our review of the record convinces us that appellant's claim that the trial court misapprehended the law on self-defense is meritless. During appellant's closing argument, the court and trial counsel engaged in the following exchange with regard to appellant's duty to retreat:

> THE COURT: Why didn't [appellant] just walk back down the cellar?
>
> MR. PHILLIPS [APPELLANT'S COUNSEL]: There is no way out of the cellar, Judge.

**2.** We are aware that, because the concepts of malice and self-defense are mutually exclusive, our finding that the evidence was sufficient to support an inference of malice ordinarily would bar us from examining a claim based on self-defense. *See Commonwealth v. Hinchcliffe*, 479 Pa. at 557, 388 A.2d at 1071 ("since there was evidence from which a jury could at least reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that Hinchcliffe did not act in self defense."). *See also Commonwealth v. Heatherington*, 477 Pa. 562, 385 A.2d 338 (1978). Here, however, appellant claims that the verdict resulted from the court's misunderstanding of the law regarding self-defense. Accordingly, we must examine the merits of this claim.

THE COURT: When he saw the argument and threats, then he was inside—

MR. PHILLIPS: Yes.

THE COURT: When he walked out and saw him or heard his voice, why couldn't he just have retreated right back down in that numbers house?

MR. PHILLIPS: Number one, the law says that there is no right to retreat.

THE COURT: You can retreat from outside.

MR. PHILLIPS: He said he was standing on the steps and he came out of that cellarway.

THE COURT: Outside, no, not in the place, in the first place, that's not his home.

MR. PHILLIPS: No, it's a place of business where he works.

\*     \*     \*     \*     \*     \*

THE COURT: The law says in Pennsylvania you still have a duty to retreat.

MR. PHILLIPS: Not in your place of business, sure. Never from a place of business, Your Honor. There are two places—

THE COURT: He was on the outside of the business.

\*     \*     \*     \*     \*     \*

MR. PHILLIPS: He's half in and half out.

THE COURT: He has a right to police the bar from one incident [one "inside it"?], the person who creates the disturbance outside of that bar shouting and hollering, you can't step outside of that bar and do anything to him.

MR. PHILLIPS: I've got half of him outside and half of him inside.

\*     \*     \*     \*     \*     \*

[T]here is no duty to retreat from a place that you work. Here's a person who—

THE COURT: That's outside, that's no one attacking him in the bar or attacking you in your house. This is outside.

\*     \*     \*     \*     \*     \*

MR. PHILLIPS: The law says that there are two places. We have a duty with everybody, if you can safely retreat, then you must do so. And you certainly can't provoke anyone....

\* \* \* \* \* \*

THE COURT: Safety. The key is safety, and you don't have any duty to retreat from your home or your place of business; right?

MR. PHILLIPS: That's correct.

THE COURT: That's correct. You don't have any, but in this case, the assailant was on the outside. That's like if somebody is outside banging on your door you cannot take a gun and shoot him through the door, you are well aware of that?

MR. PHILLIPS: I'm well aware of that.

N.T. October 24, 1986 at 219–20, 226–27, 231–32. This colloquy demonstrates the trial court's awareness that a person is not obliged to retreat from his place of work. More importantly, the colloquy also reflects the court's careful articulation of the reason why it concluded that appellant had failed to fulfill his duty to retreat: i.e., because the "danger" appellant allegedly defended himself against was *outside* his place of business, and he chose to leave the business (by stepping into the cellarway) to confront that danger. Because the record reveals that the trial court properly understood the law regarding appellant's duty to retreat, we conclude that the trial court did not err in finding that appellant did not act in self-defense.[3]

■■■ Appellant next contends that the third degree murder verdict was contrary to the weight of the evidence because the trial court should have credited his testimony rather than that of a Commonwealth witness, Paul McLau-

---

**3.** We note that the trial court also found that self-defense was disproved by the Commonwealth "[b]ecause no evidence was presented to show that the victim in this case was in fact armed." Trial Court Opinion at 5. *See also* N.T. October 24, 1988 at 229–30. Because the victim was not armed, of course, the fact finder was free to conclude that appellant's belief that he was in danger was unreasonable. This conclusion is also sufficient to disprove self-defense.

rin. The determination whether to grant a new trial on the ground that the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Before a trial court may award a new trial on this ground, it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. *Commonwealth v. Gamber*, 352 Pa.Super. 36, 45, 506 A.2d 1324, 1329 (1986); *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981).[4] When the challenge to the weight of the evidence is predicated on the credibility of the trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence "is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture," *Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976) (citations omitted), these types of claims are not cognizable on appellate review. *Id. See also Commonwealth v. Nelson*, 514 Pa. 262, 271 n. 3, 523 A.2d 728, 733 n. 3 (1987) (except in cases where penalty of death is imposed, appellate court should not entertain challenge to weight of evidence because examination is confined to "cold record").

Applying these standards to the case at bar, it is clear that the verdict was not based on surmise or conjecture. Appellant's statements and trial testimony—in which he admitted that he shot the victim—provided a sufficient basis for the court to conclude that appellant acted with malice. In addition, the undisputed physical evidence—that no weapon was found on either the victim or McLaurin—provided a sufficient basis for the court to conclude that appellant had not acted in self-defense. Thus, even if McLaurin's testimony is completely discounted, the verdict was consistent with the trial evidence. Accordingly, we cannot conclude that appellant is entitled to a new trial on

4. We note that when, as here, the court sits as fact finder, his findings are entitled to the same weight as a jury verdict. *See Commonwealth v. Starks*, 298 Pa.Super. 213, 216, 444 A.2d 736, 738 (1982).

the ground that the verdict was against the weight of the evidence.

■ Appellant next contends that the trial court erred in failing to order a new trial based on after-discovered evidence. A new trial may be granted on the basis of after-discovered evidence only if it is demonstrated that the evidence

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Smith*, 518 Pa. 15, 49, 540 A.2d 246, 263 (1988) (quoting *Commonwealth v. Buehl*, 510 Pa. 363, 393, 508 A.2d 1167, 1182 (1986)). Moreover, absent a clear abuse of discretion, the trial court's refusal to grant a new trial on the basis of after-discovered evidence will not be disturbed on appeal. *Commonwealth v. Treftz*, 465 Pa. 614, 629–30, 351 A.2d 265, 272 (1976). With these standards in mind, we have carefully reviewed the record and the briefs submitted by the parties, and we conclude that the trial court has properly disposed of this contention in its opinion. Accordingly, we affirm the disposition of this issue on the basis of the trial court's opinion.

■ Appellant next contends that the sentence imposed on him was excessive.[5]

Sentencing is a matter within the sound discretion of the sentencing court, and, generally, will not be disturbed absent an abuse of discretion. "If the sentence imposed

5. Appellant has not included in his brief a separate statement of the reasons relied upon to allow an appeal from the discretionary aspects of his sentence. *See* Pa.R.A.P. 2119(f). In the first paragraph of his argument on the sentencing claim, however, appellant does state reasons why we should allow the appeal. We note that the Commonwealth has not objected to the manner in which appellant has presented this claim, and thus it has waived any objection based on Rule 2119(f). *See Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (en banc).

is within the statutory limits, there is no abuse of discretion, unless the sentence is so manifestly excessive so as to inflict too severe a punishment."

*Commonwealth v. Parrish*, 340 Pa.Super. 528, 532, 490 A.2d 905, 907 (1985) (citations omitted), *appeal quashed*, 515 Pa. 297, 528 A.2d 151 (1987). In formulating a sentence,

> the court must consider the character of the defendant and the particular circumstances of the offense ... and must impose a sentence that is the minimum sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant.

*Commonwealth v. Edward*, 303 Pa.Super. 454, 471, 450 A.2d 15, 23 (1982) (citations omitted). *See also* 42 Pa.C.S.A. § 9721(b).

Here, appellant specifically argues that the sentence was excessive because (1) it was inconsistent with the protection of the public, the gravity of the offense, and appellant's rehabilitative needs; and (2) the court failed to consider testimony regarding appellant's good character.[6] We disagree.

At the sentencing hearing, appellant's counsel informed the court that appellant had no prior convictions; that numerous character witnesses had testified on appellant's behalf at trial; and that letters had been written by the Chief of Police and Mayor of Enfield, North Carolina, attesting to appellant's good character. N.T. December 22, 1987 at 4–7. In addition, appellant took the stand, apologized to the victim's mother, and expressed his remorse to the court. *Id.* at 11–13. Finally, the court was provided with both a pre-sentence investigation and a mental health evaluation regarding appellant. *Id.* at 4–5, 10. The court, before imposing sentence, stated that:

BY THE COURT:

Q. Let me say this before you start.

---

6. We note that this claim presents a substantial question for our review.

They have all of the elements of first-degree murder, that's the fact that you sent for the gun, you took the gun, you went outside. In other words the law is that you can't provoke the incident and then shoot and claim self-defense. You must not be the aggressor. There was all of the elements of first degree.

Because of your attorney being, well, I would consider an excellent trial attorney. He presented good character witnesses. He had people that came up from North Carolina that even testified in your behalf and had people from the community who testified in your behalf. All that was taken under consideration when this verdict was rendered.

\*  \*  \*  \*  \*  \*

And that's a first-degree murder case. If you were found guilty of first-degree murder, I would have no discretion but to sentence you to life imprisonment.

And because your attorney presented the case with character witnesses, your age, you had never been arrested before, is the reason for the verdict in the first place. . . .

\*  \*  \*  \*  \*  \*

And all the leniency that was given to you was given in the verdict. The things that we are going over now w[ere] presented at the trial which was the reason I found you guilty of third-degree murder.

\*  \*  \*  \*  \*  \*

Taking a life, even though this is your first offense, I consider, because I am now in the sentencing. I would not not even consider the trouble that you got in when you were a juvenile.

*Id.* at 11–13.

The trial court's comments at the sentencing hearing reflect its consideration not only of the gravity of any offense that involves the taking of a life, but also the *particular* circumstances of this crime (i.e., appellant was not justified, and the evidence would have supported a first

degree murder verdict), as well as mitigating factors, including appellant's good character. The court then clearly delineated the role that the mitigating factors played in both the *verdict* and the sentence. In short, the court emphasized that, although mitigating factors had convinced it to find appellant guilty of third degree murder rather than first degree murder, they did not alter the fact that appellant had pursued the victim following an argument, and, without justification, shot and killed him. On this record, we cannot conclude that the sentence imposed was an abuse of discretion.[7]

Appellant next raises four claims of ineffective assistance of trial counsel.[8] The law governing ineffective assistance of counsel claims was recently summarized by our Supreme Court as follows:

> There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

**7.** We note also that, because a pre-sentence report was filed with the trial court prior to sentencing, we must *presume* that the court properly weighed all relevant sentencing considerations. *See Commonwealth v. Devers*, 519 Pa. 88, 95, 546 A.2d 12, 18 (1988).

**8.** These claims were not raised in the court below. We note, however, that appellant is presently represented by counsel other than trial counsel, and thus "the issue of trial counsel's effectiveness may now be raised in this direct appeal." *Commonwealth v. Holmes*, 482 Pa. 97, 105 n. 3, 393 A.2d 397, 401 n. 3 (1978).

*Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). In this analysis, counsel is presumed to be effective, and appellant bears the burden of establishing that trial counsel was ineffective. *See, e.g., Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981); *Commonwealth v. Ellis*, 354 Pa.Super. 11, 510 A.2d 1253 (1986); *Commonwealth v. Jones*, 298 Pa.Super. 199, 205, 444 A.2d 729, 732 (1982). Moreover, in *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981) our Supreme Court noted that,

> Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract.

*Id.*, 492 Pa. at 563, 424 A.2d at 1335.

■ Appellant first contends that trial counsel was ineffective for failing to call Eddie Capel, an eyewitness who was present during the shooting, to testify on his behalf. In order to prove that trial counsel was ineffective for failing to investigate or call witnesses, appellant must demonstrate:

> "[1] the names and whereabouts of these witnesses, [2] the substance of their testimony and [3] how they would have appreciably strengthened his defense. Moreover, ... [appellant must show] [4] that his trial counsel knew of the existence of the witnesses who purportedly should have been called." *Commonwealth v. Clemmons*, 505 Pa. 356, 365, 479 A.2d 955, 959 (1984).

*Commonwealth v. Humpheys*, 367 Pa.Super. 154, 160, 532 A.2d 836, 838 (1987), *allocatur denied. See also Commonwealth v. Torres*, 329 Pa.Super. 58, 68, 477 A.2d 1350, 1355 (1984).

Here, the record reveals that trial counsel was aware that Capel was present at trial and available to testify. N.T. October 23, 1986 at 158; N.T. October 24, 1986 at 176.

Appellant, however, makes no specific allegation regarding either the substance of Capel's testimony or the manner in which it would have been helpful to the defense. Instead, appellant suggests that, because Capel was present at the scene, "[i]t would therefore be within his knowledge whether [the victim] said anything threatening to [appellant] just before getting shot, whether he was reaching toward his pants' waistband just then, and he would know if [appellant] was on the cellar steps or all the way out of the place." Brief for Appellant at 26–27. Because appellant's argument is based on mere speculation regarding the substance of Capel's testimony, rather than on what the testimony would be *in fact,* he has failed to allege sufficient facts for us to conclude that the testimony would have been helpful to the defense. *See Commonwealth v. Pettus, supra.* Accordingly, we cannot conclude that trial counsel was ineffective for failing to have Capel testify at trial. *See Commonwealth v. Humpheys, supra.*

■■■■■■ Appellant next contends that trial counsel was ineffective for failing to correct the trial court's mistaken understanding that appellant had the burden of proving that he had acted in self-defense.[9] When, as here, a case is tried to the court rather than a jury, we will presume that the court applied proper legal standards. *See Commonwealth v. Donofrio,* 247 Pa.Super. 345, 348, 372 A.2d 859, 860 (1977) ("[t]he Judge is imbued with the knowledge of the law that he would have given in a formal charge in a jury case").

Appellant's argument that the trial court misallocated the burden of proof is premised on a single sentence in the trial court's opinion. The court stated:

> Because no evidence was presented to show that the victim in this case was in fact armed, and because defendant had an opportunity to fulfill his duty to retreat and

9. When a claim of self-defense is raised, the Commonwealth, of course, has the burden of showing beyond a reasonable doubt that the killing was not in self-defense. *Commonwealth v. Hinchcliffe, supra* 479 Pa. at 552, 388 A.2d at 1069; *Commonwealth v. Carbone, supra* at 375 Pa.Super. at 270, 544 A.2d at 466.

failed to do so, *defendant has failed to sustain a valid claim of self defense....*

Trial Court Opinion at 5 (citations omitted) (appellant's emphasis). Nothing in this sentence suggests that the trial court imposed upon appellant the *ultimate* burden of proving the elements of self-defense. Moreover, as we have noted earlier in this Opinion, the court had before it (1) testimony from police officers and Paul McLaurin that the victim was unarmed, and (2) uncontradicted evidence, including appellant's testimony, that appellant had left the store and was in the cellarway when he shot the victim, and that the victim himself was outside the store. Viewed in light of the trial evidence, the statement is an accurate summary of the testimony on the self-defense issue. We are not prepared to hold that the mere fact that the court inartfully phrased its legal conclusion in terms of the claim being "unsustained" rather than "disproved" is sufficient to overcome the presumption that the court applied proper legal standards. *See Commonwealth v. Donofrio, supra.* Accordingly, appellant's claim that trial counsel should have corrected the court's misunderstanding of the law on self-defense lacks arguable merit.[10]

Appellant next claims that trial counsel was ineffective for failing to call as a witness Dr. Robert Segal, the pathologist who performed the autopsy on the victim. Dr. Segal's post-mortem examination was admitted into evidence pursuant to a stipulation by the parties. The report apparently stated that the course of the gunshot wound was "minimally from above downward." Appellant suggests that, because this unexplained statement regarding the trajectory of the pellets was inconsistent with appellant's testimony regarding the relative positions of the parties when he shot the victim, the court may have discounted his testimony on self-defense. Appellant argues that, if counsel had called Dr. Segal to the stand, Dr. Segal

---

**10.** We note also that counsel was replaced by present counsel before the court's opinion was filed. Thus, even if the court misallocated the burden of proof, counsel would have been unaware of it at the time he represented appellant.

could have provided an explanation for the course of the gunshot wound that was consistent with appellant's testimony.

We fail to see how counsel's failure to call Dr. Segal prejudiced appellant. The thrust of appellant's argument is that Dr. Segal would have corroborated his testimony that he was in the cellarway and not on the sidewalk when he shot the victim. We note, however, that the court's verdict was not inconsistent with appellant's testimony. Indeed, a determination of appellant's exact position in the cellarway was not necessary to the court's conclusion that appellant did not act in self-defense: i.e., even if appellant *was* on the second step in the cellarway rather than on the sidewalk, the fact would remain that he had not acted in self-defense because he left the store, and continued the confrontation with the victim, who was outside the cellarway and unarmed. Thus, the court could have believed appellant's testimony in its entirety, and still concluded that he had not acted in self-defense. Because appellant has failed to demonstrate in what respect the failure to call Dr. Segal prejudiced him, we cannot conclude that counsel was ineffective in this regard. *See Commonwealth v. Davis, supra.*

Appellant last contends that trial counsel was ineffective because counsel's "performance overall was diminished by his own troubles." Brief for Appellant at 33. Appellant alleges that, at the time of the trial below, counsel knew that he was under investigation by federal authorities. Appellant then cites to alleged "errors and omissions" by counsel that he claims "could have been the result of the strain that [counsel] must have been under and the distraction that must have detracted from his concentration on [appellant's] cause." *Id.*

Initially, we note that there is no record evidence regarding the nature and scope of counsel's alleged personal legal problems. Thus, we cannot determine what, if any, effect they could have had on counsel's performance at appellant's trial. Moreover, the specific "errors and omissions" that appellant cites are not of a quality that would call into

question counsel's ability to render competent assistance; indeed, appellant himself concedes that counsel's "derelictions" were not "earthshaking." *Id.* at 36. Because appellant has failed to allege facts sufficient to show that counsel's personal problems affected his ability to provide competent representation, we conclude that this claim lacks arguable merit. *See Commonwealth v. Davis, supra; Commonwealth v. Pettus, supra.*

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.