633 A.2d 618

**COMMONWEALTH of Pennsylvania**

v.

**Norman Wayne MANCHAS, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1993.

Filed Oct. 28, 1993.

Cynthia Cline, Uniontown, for appellant.

Ralph C. Warman, Dist. Atty., Uniontown, for Com., appellee.

Before ROWLEY, P.J., and WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Norman Wayne Manchas was tried by jury and was found guilty of third degree murder in connection with the killing of Frances Layne at her home in Uniontown on April 3, 1991.[1] Post-trial motions were denied, and Manchas was sentenced to serve a term of imprisonment for not less than ten (10) years nor more than twenty (20) years. On direct appeal from the judgment of sentence, Manchas contends that: (1) his conviction was not supported by the evidence; (2) the jury's verdict was contrary to the weight of the evidence; (3) the trial court erred by denying a defense motion in limine based upon allegedly flagrant violations of discovery rules by the district attorney; and (4) the trial court erred by refusing a defense request for an accomplice charge with respect to the testimony of Donald Powell, a Commonwealth witness. We will consider these issues seriatim.

On April 3, 1991, at or about 4:15 a.m., police received a report of a disturbance at 191 North Gallatin Street in the City of Uniontown. Upon arrival at the scene, the police found the body of Frances Layne on the sidewalk in front of her home. Layne's throat had been cut, with the jugular vein having been completely severed and the carotid artery and windpipe partially severed. There was also a cut on Layne's right thumb, lacerations and bruises about her face, a broken

---

1. Manchas had been tried previously for the same homicide, but the trial had ended in a mistrial after the jury became deadlocked and unable to reach a unanimous verdict.

nose and bruises in the area of her right breast. Semen was present in Layne's mouth. During their investigation of the killing, police were able to identify fingerprints belonging to appellant on a beer can and a butcher knife found in the living room of Layne's home. When appellant was first interviewed by police on the afternoon of April 3, 1991, he denied having been present in Layne's home. When he was again interviewed by police on April 10, 1991, appellant gave several accounts of when he had last visited Layne's home. When confronted with the presence of his fingerprints, however, appellant admitted that he had visited Layne on the morning of her death. He said that Layne had been alive when he left at approximately 4:30 or 5:00 a.m. On April 15, 1991, knowing that he was being sought by police, appellant went to the home of Marie Rose and asked her to allow him to hide there and give him a ride to Masontown at nightfall. Appellant was arrested by police in Rose's attic.

Donald Powell, a friend of appellant, testified that after a night of drinking he had accompanied appellant to Layne's home at approximately 3:30 a.m. on the morning of April 3. Upon arrival, Layne had allowed them to come into her home, where they sat in the living room, talked and drank beer for about thirty minutes. Powell then excused himself to go to the bathroom. From there, he heard Layne scream. After Powell exited the bathroom, he observed appellant and Layne standing on the front porch, saw appellant make a swinging motion in the direction of Layne's head and heard Layne say "Stop it." When appellant re-entered the house, Powell thought he saw blood on appellant's hand. Powell then went out onto the porch to see if Layne was all right. He received no response to a verbal inquiry, but saw Layne sitting on the steps covered with blood. Powell then began running down a nearby alley, but upon realizing that he had left his coat in Layne's home, he returned. By this time Layne was prone on the sidewalk and again did not respond to an inquiry by Powell about her condition. After retrieving his coat, Powell found appellant still inside Layne's home and urged him to flee. Powell and appellant ran from the house, down an alley

and across town to appellant's apartment. When they arrived at appellant's apartment, Powell observed that a carpet knife, which he had seen on appellant's television prior to their going to Layne's house, was no longer there. Police found a carpet knife in a creek near Layne's house, and when they showed the knife to Powell, he identified it as being similar to the one he had seen at appellant's apartment.

Testimony was also given by Edna West, a neighbor of Frances Layne, who said she had been awakened by a scream and, upon going to her living room window, had seen Layne sitting along the wall of her front steps. West then had seen a person matching appellant's description enter Layne's house. West subsequently saw Donald Powell come out of Layne's house, ask Layne if she was all right, and start to run down the alley between Layne's house and her own house. After Powell had begun to run down the alley, West saw Frances Layne move to the bottom of her steps, sit down and begin to rock back and forth while holding her neck. West then observed Layne fall backwards, as if she had passed out. Thereafter, West saw Powell return to Layne's house and then re-emerge holding a coat. At this point, fearing for Layne's safety, West left the window in order to awaken her boyfriend. When she returned to the window, West heard Powell calling to someone and then she saw Powell and appellant flee down the alley.

Testimony was also given by William McMurray, who had once lived in the same apartment house as appellant. He related that, approximately seven or nine months prior to trial, he had encountered appellant on a street in Uniontown. McMurray said that he had remarked to appellant about his trouble with police and then asked appellant what had happened. In response, appellant told McMurray that he had cut Layne's throat. McMurray said that he was so shocked by appellant's reply that he could recall no further details of the conversation which he had had with appellant.[2]

2. Neither Edna West nor William McMurray had testified at appellant's first trial.

Finally, appellant testified on his own behalf and admitted that he had been at Layne's house at the time of her death, but denied that he had killed her. He testified that, while Donald Powell had been in the bathroom, Layne had answered a knock at the front door. After a brief conversation with the unidentified caller, Layne had stepped onto her porch, closing the door behind her. Appellant said he then had heard Layne scream and he had gone outside to check on her. There, he had found Layne dead on the sidewalk. Appellant said he had discovered a knife laying next to Layne's body, which he had picked up and then threw down. He said he had observed an unidentified man running away from Layne's house. According to appellant, he then had gone back into Layne's house, where Powell had approached him and urged him to flee because the police would think that they had been involved in the killing. As he and Powell had left the house, appellant said, he stopped to pick up the knife because he realized that he had touched it. Subsequently, he threw the knife into a creek near Layne's house, where it was later found by police.

In challenging both the sufficiency and the weight of the evidence to sustain the conviction, appellant makes the following assertions: (1) the testimony of Donald Powell was inconsistent with the testimony of other witnesses and inconsistent with Powell's testimony at appellant's preliminary hearing and at the first trial; (2) the testimony of Edna West and William McMurray was incredible; and (3) the Commonwealth's evidence was wholly circumstantial, without any evidence of a motive or malice or any ill will by appellant toward the victim.

"The proper procedure to challenge the sufficiency of the evidence is by a post-verdict motion in arrest of judgment." *Commonwealth v. Taylor,* 324 Pa.Super. 420, 424, 471 A.2d 1228, 1229 (1984). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove

guilt beyond a reasonable doubt." *Commonwealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). "When conflicts and discrepancies arise, it is within the province of the jury to determine the weight to be given to each [witness's] testimony and to believe all, part or none of the evidence as [it] deem[s] appropriate." *Commonwealth v. Verdekal,* 351 Pa.Super. 412, 419–420, 506 A.2d 415, 419 (1986). Therefore, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

■ "A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Taylor, supra* 324 Pa.Super. at 425, 471 A.2d at 1230. The decision whether to grant a new trial on this basis rests within the discretion of the trial court. *Commonwealth v. Hunter,* 381 Pa.Super. 606, 617, 554 A.2d 550, 555 (1989). "A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and [make] the award of a new trial [ ] imperative so that right may be given another opportunity to prevail." *Commonwealth v. Whitney,* 511 Pa. 232, 239, 512 A.2d 1152, 1155–1156 (1986). "The role of an appellate court in reviewing the weight of the evidence is very limited." *Commonwealth v. Sanders,* 426 Pa.Super. 362, 367, 627 A.2d

183, 185 (1993). "The purpose of that review is to determine whether the trial court abused its discretion and not to substitute [the reviewing] Court's judgment for that of the trial court." *Commonwealth v. Murray,* 408 Pa.Super. 435, 440, 597 A.2d 111, 114 (1991) (en banc). Accordingly, "[w]here the evidence is conflicting, the credibility of the witnesses is solely for the jury, and if its finding is supported by the record, the trial court's denial of a motion for new trial will not be disturbed." *Commonwealth v. Larew,* 289 Pa.Super. 34, 37, 432 A.2d 1037, 1038 (1981).

After careful review, we are satisfied that sufficient evidence was presented to sustain appellant's conviction for third degree murder. When the evidence is viewed in the light most favorable to the Commonwealth, it becomes apparent that appellant was not only present at the victim's home at the time of the murder, but he had a clear opportunity to commit the crime and possessed a knife capable of causing the fatal injuries. Donald Powell testified that appellant and the victim had been on the porch together after he had heard the victim's scream. Powell also saw appellant make a swinging motion in the direction of the victim's head. Shortly thereafter, when appellant re-entered the victim's house, Powell found the victim sitting on her front steps covered with blood. Powell saw no other persons in the vicinity of the victim's house. He also had observed in appellant's apartment, prior to the crime, a knife which was similar to the one removed from the crime scene by appellant, but the same knife was not seen by Powell in appellant's apartment after the killing. Testimony by a forensic pathologist established that this knife was capable of causing the fatal injuries to the victim's throat. When these circumstances are considered in light of the testimony of the victim's neighbor, which corroborated Powell's testimony in several respects, and appellant's admission to William McMurray that he had cut the victim's throat, it seems clear that there was sufficient evidence to enable a jury to conclude beyond a reasonable doubt that appellant was the person who had killed Frances Layne. Consciousness of guilt, moreover, could be inferred from appellant's having fled the

scene, from his attempt to dispose of the knife which he said he had found next to the victim's body, from his false and contradictory statements to police, and from his attempt to conceal his whereabouts to avoid being arrested. These actions on appellant's part, a jury could find, cemented the guilt which could be inferred from the testimony of other Commonwealth witnesses. See: *Commonwealth v. Pestinikas,* 421 Pa.Super. 371, 387–388, 617 A.2d 1339, 1347–1348 (1992) (en banc).

Appellant's contention that the testimony of Commonwealth witnesses was inconsistent and incredible provides no basis for concluding that appellant's conviction was not supported by sufficient evidence. Such a contention is more properly addressed to the weight of the evidence. As we have already observed, it was solely for the jury to evaluate the credibility of the witnesses and to resolve any conflicts in the testimony. Here there was ample evidence from which a jury could find appellant guilty.

The fact that no motive for the killing was established does not constitute a fatal flaw in the Commonwealth's case. While proof of a motive for the commission of a crime is always relevant, it is not an essential element and is not necessary to warrant a conviction. 10A P.L.E., Criminal Law, § 401, at 135 (1970). See: *Commonwealth v. Brantner,* 486 Pa. 518, 522–523, 406 A.2d 1011, 1013 (1979); *Commonwealth v. DePetro,* 350 Pa. 567, 572, 39 A.2d 838, 840 (1944); *Commonwealth v. LaRosa,* 283 Pa.Super. 264, 268, 423 A.2d 1247, 1249 (1980).

We also reject appellant's contention that there was no evidence of malice or ill will between appellant and the victim. It is well settled that "[t]he Commonwealth may prove third degree murder by reasonable inferences drawn from the circumstances of the killing." *Commonwealth v. Bigelow,* 416 Pa.Super. 449, 454–455, 611 A.2d 301, 304 (1992). "One such circumstance is the use of a deadly weapon." *Commonwealth v. Hunter, supra* 381 Pa.Super. at 613, 554 A.2d at 553. Indeed, "the inference [arising] from the use of a

deadly weapon upon a vital part of the body alone is sufficient to establish malice." *Commonwealth v. Torres,* 396 Pa.Super. 499, 503, 578 A.2d 1323, 1325 (1990). See also: *Commonwealth v. Carbone,* 524 Pa. 551, 562–563, 574 A.2d 584, 590 (1990); *Commonwealth v. Lee,* 426 Pa.Super. 345, 351–353, 626 A.2d 1238, 1241–1242 (1993). The evidence here was sufficient to establish that appellant had acted with the requisite malice necessary to sustain a conviction for third degree murder.

Our review of the record in this case discloses no basis for concluding that the trial court abused its discretion by refusing to award appellant a new trial on grounds that the jury's verdict of guilty was contrary to the weight of the evidence. The trial court considered appellant's arguments more specifically as follows:

Defendant also contends that the verdict was against the weight of the evidence because of contradictory testimony given by Commonwealth witnesses Donald Powell and Edna West. Defendant states that Powell testified Layne sat on the stairs after Defendant reentered the house and West stated that Layne sat on the wall along the stairs, rocking back and forth. Describing their flight from the house, Powell indicated that Defendant ran out of the house with him and then down an alley, while West testified that she saw only Powell emerge from the house and a second person come from around the far side of the porch. West also said that the porch light was on while she was observing the scene, but the first police officer to arrive a few minutes later testified that the light was not on.

Defendant additionally argues that Powell contradicted himself by giving different versions under oath at the preliminary hearing, the June mistrial and the September retrial. Defendant claims that Powell testified at the preliminary hearing that he saw nothing unusual about Defendant's appearance when Defendant reentered the house, while saying in June that he saw blood on him but could not say where and then testifying at the retrial that he saw blood on Defendant's hands. Defendant also points to Powell's testimony at the preliminary hearing that he heard

nothing while he was in the bathroom but testified at both trials that he heard a scream.

Defendant further alleges contradictions between Powell's evidence that he saw Defendant make one swinging motion toward Layne while they were standing on the porch but did not see Defendant touch her, and the evidence offered by the expert pathologist who opined that Layne's throat wound could not have been made with just one slashing movement but instead would have required at least two forceful, deliberate cuts. The pathologist also offered his opinion that a fall down the stairs (presumably after she had been slashed) could not account for all of the victim's bruises.

Defendant's argument on this issue as set forth in his brief appears to be that the foregoing discrepancies among the Commonwealth witnesses, coupled with his own testimony that an unknown person summoned Layne to her porch while Powell was in the bathroom and Defendant found her at the foot of the stairs when he went out to the porch in response to her screams while noticing someone running away in the next block, rendered the verdict purely speculative.

The Court initially must point out that it is common for witnesses to be inconsistent and not all inconsistencies are necessarily contradictions. The mere existence of conflict in the prosecution's case is not fatal since the Commonwealth is not bound by everything its witnesses say. *Commonwealth v. Smith,* 502 Pa. 600, 467 A.2d 1120 (1983). It is within the province of the jury to reconcile inconsistent testimony, if possible, or to resolve inconsistencies from prior testimony in favor of that offered at trial, *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 444 A.2d 115 (1982), and to believe all, part or none of the evidence, assigning to it whatever weight it deems appropriate. *Commonwealth v. Cardwell,* 357 Pa.Super. 38, 515 A.2d 311 (1986).

The fact that the jury apparently disbelieved Defendant's version of events and may have believed all of one Common-

wealth witness's testimony but only part or even none of other Commonwealth witnesses is not shocking to the Court's sense of justice. See *Commonwealth v. Ables*, 404 Pa.Super. 169, 590 A.2d 334 (1991).

Trial Court Opinion at pp. 14–17. The jury's verdict, thus, did not shock the trial court's conscience, and this Court can find no basis for disagreement.

██ Prior to the start of trial, appellant moved to dismiss the prosecution or, in the alternative, to exclude the testimony of Commonwealth witness William McMurray on grounds that the district attorney had failed to disclose timely the existence of the witness and had failed entirely to disclose the fact that the witness had been convicted and was awaiting sentencing for aggravated assault. The trial court found that there was no excuse for the district attorney's failure to disclose mandatory discovery information with respect to William McMurray's testimony. However, the court also concluded that, because appellant had not been prejudiced by the district attorney's violation of the discovery rule, neither a dismissal of the prosecution nor preclusion of McMurray's testimony was warranted.

Review of the record discloses that William McMurray originally gave a statement to police on June 15, 1992, in which he related the inculpatory statement which appellant had made to him. The existence of McMurray as a Commonwealth witness and the substance of his testimony, however, had not been disclosed by the Commonwealth until September 8, 1992, six days prior to the scheduled start of trial. Despite the Commonwealth's tardy disclosure, defense counsel, prior to trial, was permitted to interview McMurray. Moreover, through her own independent investigation, counsel had been able to learn that McMurray had been convicted of aggravated assault and that his sentencing therefor had been continued three times at the request of the Commonwealth. This information was fully utilized at trial to attempt to impeach McMurray's testimony.

Pa.R.Crim.P. 305 B provides, in pertinent part, as follows:

## B. Disclosure by the Commonwealth

(1) **Mandatory:** In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth . . . .

Pa.R.Crim.P. 305 B(1)(a) and (b). "In some circumstances, evidence tending to impeach the credibility of a witness, if possessed by the Commonwealth, may be material and subject to discovery under Rule 305B(1)." *Commonwealth v. Gelormo,* 327 Pa.Super. 219, 231, 475 A.2d 765, 771 (1984). See: *Commonwealth v. Jenkins,* 476 Pa. 467, 383 A.2d 195 (1978); *Commonwealth v. Melendez,* 326 Pa.Super. 531, 544, 474 A.2d 617, 623 (1984). "The purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial. Trial by ambush is contrary to the spirit and letter of those rules and cannot be condoned." *Commonwealth v. Moose,* 529 Pa. 218, 236, 602 A.2d 1265, 1274 (1992). See also: *Commonwealth v. Thiel,* 323 Pa.Super. 92, 470 A.2d 145 (1983).

With respect to violations of Rule 305 B(1), the Superior Court has made the following observations:

"When a party has failed to comply with Rule 305, the trial court has broad discretion in choosing an appropriate

remedy." *Commonwealth v. Palmer*, 319 Pa.Super. 56, 58, 465 A.2d 1050, 1052 (1983). See also: *Commonwealth v. Cannady*, 404 Pa.Super. 215, 221, 590 A.2d 356, 359 (1991); *Commonwealth v. Feflie*, 398 Pa.Super. 622, 635, 581 A.2d 636, 643 (1990). In this regard, Pa.R.Crim.P. 305 E states:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

In *Commonwealth v. Johnson*, 310 Pa.Super. 385, 456 A.2d 988 (1983), the Superior Court said:

Pa.R.Crim.P. 305 E gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements. In many cases, ordering a continuance will be an adequate remedy. This will be so where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise. *E.g., Commonwealth v. Parente*, 294 Pa.Superior Ct. 446, 440 A.2d 549 (1982); *Commonwealth v. Bey*, 294 Pa.Superior Ct. 229, 439 A.2d 1175 (1982). Sometimes, however, the prejudice will go beyond surprise; if the prejudice is so great that the fairness of the trial has been affected, a new trial should be ordered. *Commonwealth v. Jenkins*, 476 Pa. 467, 383 A.2d 195 (1978).

*Id.* 310 Pa.Super. at 395, 456 A.2d at 993. "[I]n order to be awarded a new trial, [a defendant] must prove that the evidence was exculpatory and material to his case, and that the Commonwealth's failure to disclose the evidence was prejudicial." *Commonwealth v. Hudgens, supra* 400 Pa.Super. [79] at 96, 582 A.2d [1352] at 1361 [ (1990) ]. See also: *Commonwealth v. Murphy*, 493 Pa. 35, 45–46, 425 A.2d 352, 357 (1981); *Commonwealth v. Woodell*, 344 Pa.Super. 487, 491–492, 496 A.2d 1210, 1212–1213 (1985).

*Commonwealth v. Ulen*, 414 Pa.Super. 502, 519–520, 607 A.2d 779, 788 (1992), *allocatur granted*, 533 Pa. 624, 620 A.2d 491 (1993).

Instantly, review of the record demonstrates that appellant was not prejudiced by the Commonwealth's discovery violations. Defense counsel was fully prepared at trial and was able to cross-examine Commonwealth witness McMurray effectively with respect to his prior criminal record and the postponement of his sentencing until the conclusion of appellant's trial.

Appellant's reliance upon the decision of the Pennsylvania Supreme Court in *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), is misplaced. In *Smith*, the Court held that the double jeopardy clause of the Pennsylvania Constitution may bar retrial of a defendant in cases where the prosecutor has intentionally undertaken to deprive the defendant of a fair trial. However, *Smith* did not "create a *per se* bar to retrial in all cases of intentional prosecutorial misconduct." *Commonwealth v. Rightley*, 421 Pa.Super. 270, 279, 617 A.2d 1289, 1293–1294 (1992). Instantly, the misconduct of the prosecutor involved the failure to comply fully with the rules of discovery. The proper remedy for such a violation was vested in the discretion of the trial court pursuant to Pa.R.Crim.P. 305 E. Where, as here, the failure of the prosecutor to fully comply with the discovery rules did not deny the defendant a fair trial, neither dismissal of the charges nor the grant of a new trial was required. Moreover, because appellant demonstrated no prejudice whatsoever as a result of the discovery violations in this case, the trial court did not abuse its discretion by refusing to exclude the testimony of Commonwealth witness William McMurray. Defense counsel was not surprised at trial by the substance of McMurray's testimony and was fully able to cross-examine McMurray regarding any expectation of leniency he may have had with respect to his pending sentencing for aggravated assault.[3]

3. Whether or not the district attorney's violation of discovery rules was intentional is not necessarily controlling. "It is the effect on the right to a fair trial, not the prosecutor's state of mind, that results in the

■ Finally, appellant contends that the trial court committed reversible error when it refused to include an accomplice charge in its jury instructions with respect to Commonwealth witness Donald Powell. Appellant asserts that such a jury instruction was required because Powell had been initially suspected by police of being involved in the murder of Frances Layne and, in fact, had been arrested and charged. It was only after he had agreed to cooperate with police and testify against appellant at the preliminary hearing that the charges against Powell were dropped. Under these circumstances, appellant's argument continues, a jury could infer that Powell's testimony came from a "corrupt and polluted source." Alternatively, appellant asserts that the police may have arrested Powell, even though they knew him to be innocent, in order to force him to inculpate appellant; and, therefore, the Commonwealth should be estopped from objecting to an accomplice charge.

■ "It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so." *Commonwealth v. Sisak,* 436 Pa. 262, 265, 259 A.2d 428, 430 (1969). "The justification for the instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leniency." *Commonwealth v. Watts,* 348 Pa.Super. 224, 228, 501 A.2d 1152, 1154 (1985). See also: *Commonwealth v. Gainer,* 397 Pa.Super. 348, 357, 580 A.2d 333, 337 (1990) (en banc). "An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference." *Commonwealth v. Upshur,* 488 Pa. 27, 32, 410 A.2d 810, 812 (1980). Thus, "[i]f the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's

reversible error." *Commonwealth v. Jenkins, supra* 476 Pa. at 474, 383 A.2d at 198.

testimony." *Commonwealth v. Thomas,* 479 Pa. 34, 37–38, 387 A.2d 820, 822 (1978). "Where, however, there is no evidence that would permit the jury to infer that a Commonwealth witness was an accomplice, the court may conclude as a matter of law that he was not an accomplice and may refuse to give the charge." *Commonwealth v. Smith,* 343 Pa.Super. 435, 448, 495 A.2d 543, 549 (1985). See also: *Commonwealth v. Franklin,* 397 Pa.Super. 265, 282, 580 A.2d 25, 34 (1990). This is so because "[a] trial court is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial." *Commonwealth v. Tervalon,* 463 Pa. 581, 593, 345 A.2d 671, 678 (1975). See also: *Commonwealth v. Coleman,* 344 Pa.Super. 481, 485, 496 A.2d 1207, 1209 (1985); *Commonwealth v. Santarelli,* 334 Pa.Super. 589, 601, 483 A.2d 895, 901 (1984), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

 With respect to whether a person is an accomplice in the commission of a crime, the Superior Court has summarized the applicable law as follows:

An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey,* 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981). See: 18 Pa.C.S. § 306. See also: *Commonwealth v. Jones,* 213 Pa.Super. 504, 508, 247 A.2d 624, 626 (1968). To be an accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields, supra* 460 Pa. [316] at 319–320, 333 A.2d [745] at 747 [ (1975) ]; *Commonwealth v. McFadden,* 448 Pa. 146, 150, 292 A.2d 358, 360 (1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth v. Flowers,* 479 Pa. 153, 156, 387 A.2d 1268, 1270 (1978). "[A] showing of mere presence at the scene of a crime is insufficient to support a conviction: evidence indicating participation in the crime is required." *Commonwealth v. Keblitis,* 500 Pa. 321, 324, 456 A.2d 149, 151 (1983). See also: *Commonwealth v. Smith,* 490 Pa. 374, 416 A.2d

517 (1980); *Commonwealth v. Blankenbiller*, 362 Pa.Super. 477, 524 A.2d 976 (1987); *Commonwealth v. Johnson*, 355 Pa.Super. 372, 513 A.2d 476 (1986). "Even presence at the scene of a crime in the company of its perpetrator has been held to be insufficient to sustain a conviction." *In re Hawthorne*, 374 Pa.Super. 104, 107, 542 A.2d 167, 169 (1988). See also: *Commonwealth v. Roscioli, supra* 454 Pa. [59] at 63–64, 309 A.2d [396] at 399 [ (1973) ]; *Commonwealth v. Garrett*, 423 Pa. 8, 12–13, 222 A.2d 902, 905 (1966); *In re Amos*, 287 Pa.Super. 446, 449, 430 A.2d 688, 690 (1981).

*Commonwealth v. Brady*, 385 Pa.Super. 279, 284–285, 560 A.2d 802, 805 (1989). Pursuant to these principles, "an accomplice instruction is only warranted when the evidence shows the witness was an active partner in the intent to commit the crime." *Commonwealth v. Phillips*, 411 Pa.Super. 329, 341, 601 A.2d 816, 822 (1992), *allocatur granted*, 530 Pa. 665, 610 A.2d 45 (1992). See also: *Commonwealth v. Johnson*, 419 Pa.Super. 625, 653–654, 615 A.2d 1322, 1336 (1992); *Commonwealth v. Howard*, 375 Pa.Super. 43, 50, 543 A.2d 1169, 1172–1173 (1988).

Our review of the testimony at appellant's trial discloses no evidence from which the jury could have inferred that Powell had been an active participant in the killing of Frances Layne. Neither the Commonwealth's evidence nor that of the defense implicated Powell in the killing. Rather, the evidence at trial established that Powell was merely present with appellant in Layne's home at the time of the murder. Even appellant's testimony was that Powell had not been involved in the killing of Layne. Therefore, it is abundantly clear that the trial evidence did not require an accomplice instruction with respect to Powell. The mere fact that Powell had at one time been arrested and charged in connection with the crime did not give rise to an inference that he was an accomplice where there was no evidence presented at trial to indicate that he, in any way, had aided in the murder. Nor do we find any evidence in the record which suggests that the police acted in bad faith or abused their power by arresting Powell merely to

coerce him to give evidence against appellant. It appears, rather, that the arrest of Powell had been based upon a mistaken conclusion by police that he had been involved in the killing. In any event, in the absence of evidence at trial that Powell had been an accomplice in the murder of Frances Layne, appellant was not entitled to the benefit of a jury instruction that Powell's testimony had come from a "corrupt source." The trial court did not err by refusing appellant's request that such an instruction be given.

Having found no basis to disturb the verdict of the jury, the judgment of sentence is, as it must be,

AFFIRMED.