663 A.2d 195

**COMMONWEALTH of Pennsylvania,**

v.

**David ZEWE, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1995.

Filed Aug. 2, 1995.

18

20

H. David Rothman, Pittsburgh, for appellant.

Michael Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, FORD ELLIOTT and HESTER, JJ.

CIRILLO, Judge:

David Zewe appeals from a judgment of sentence entered in the Court of Common Pleas of Allegheny County following his conviction for two counts of first degree murder[1] and three counts of recklessly endangering another person.[2] We affirm.

Zewe was tried by a jury before the Honorable Alan S. Penkower on November 5, 1986. The evidence presented at trial established that Zewe had suffered from mental illness for approximately three years prior to the events necessitating this appeal. He enlisted in the Navy in 1976 and in 1980

1. 18 Pa.C.S.A. § 2501(a)..
2. 18 Pa.C.S.A. § 2705.

began having auditory hallucinations in the form of voices accusing him of having sex with his dog. Zewe did not initially inform anyone of his problem.

Soon after, Zewe was transferred to Japan where his auditory hallucinations continued. Outward manifestations of the hallucinations drew attention to Zewe while in Japan and he was sent to a psychiatrist. Zewe sought and received a two week leave to return to the United States.

As a result of his mental illness Zewe was discharged from the Navy. From the time he returned from Japan (1980) to the time he was taken into custody (1983), Zewe, when he was not in the hospital, lived at his parents' home. During this time Zewe was diagnosed a paranoid schizophrenic and was prescribed medication for treatment of his mental illness. However, he only took his prescriptions sporadically. As a result, his condition fluctuated, but at no point was he outwardly violent.[3] Zewe complained that the source of his problem was transmitters and electrodes that the Navy had implanted in his head.

The Posati family lived next door to Zewe and his parents. Family members testified at trial that they knew who Zewe was and regularly saw him outside, but rarely said more than hello. They also testified that they had no knowledge of any animosity between the families.

On September 10, 1983 the Posatis were having a family reunion attended by approximately twenty-five to thirty people. At roughly 6:00 p.m. the Posatis and their guests decided to play volleyball. While the volleyball net was being set up some of the guests noticed Zewe entering the Posati's yard heavily armed.[4] Before anyone realized what was happening,

3. At one point Zewe indicated to his mother that the voices had told him to commit murder. When she asked if he would ever "do anything like that," he responded "no, I guess not." During the summer of the shooting Zewe told his younger brother that the voices in his head "told me to hurt you, but I would never do anything to hurt you because I love you."

4. The weapon used in the shooting was a .223 caliber semi automatic Reuger (a high velocity weapon). Zewe was also armed with a six millimeter rifle and a forty-five caliber semi automatic pistol. All were

Zewe began firing into the group of guests who had congregated outside.

Of the several people shot, Creaig Posati (the son of Mr. and Mrs. Posati) and Michael Frantz (Creaig's cousin) died as a result of the injuries they sustained that afternoon. Phillip Kosakowski, Claude Frantz and Lynne Downard, all guests at the party, were also wounded during the shooting.

Zewe's facial expression was described by witnesses as "angry" during the shooting, but his expression visibly calmed soon after. He began making statements to Mr. Posati and other guests, such as "Look what I've done . . . I've shot these two boys . . . shoot me." Referring to Creaig Posati as he lay on the ground, Zewe said "He's been hassling me, I can't take it anymore."

The police were summoned and Zewe did not resist when he was disarmed and taken into custody. He asked that the police not kill him and stated that "they asked for it and they got it."

Zewe attempted to establish that he was legally insane at the time of the killings and sought a not guilty verdict based on his insanity defense.[5] At the close of trial Zewe was found guilty but mentally ill on two counts of murder of the first degree and three counts of reckless endangerment of another person.

Zewe filed post-verdict motions which were denied. He was sentenced by Judge Penkower to two concurrent life sentences for first degree murder and one to two years for each conviction of reckless endangerment of another person to run consecutively with the life sentences. A timely notice of appeal was filed.

Zewe raises eight claims for our review:

fully loaded and Zewe had a large quantity of additional ammunition on his person. The weapons had been procured prior to the onset of Zewe's mental illness.

5. The insanity defense centered around Zewe's contention that he opened fire on the guests at the party because he thought they had obtained a gun from the police, and the voices told him to protect himself.

(1) Whether the record established Zewe's insanity as a matter of law, or, in the alternative, whether the verdict was against the weight of the evidence?

(2) Whether the court's charge to the jury on expert testimony deprived appellant of a fair trial?

(3) Whether the trial court committed reversible error in allowing the cross examination of Zewe's expert on irrelevant and immaterial matters?

(4) Whether the verdict of guilty but mentally ill deprived Zewe of due process and equal protection?

(5) Whether the verdict of guilty but mentally ill denied Zewe of due process and equal protection of the law including effective assistance of counsel?

(6) Whether the enactment of the verdict of guilty but mentally ill exceeds Pennsylvania's valid police power, thus depriving Zewe of his constitutional rights?

(7) Whether Zewe is entitled to a new trial because the trial court erred in instructing the jury?

(8) Whether Zewe is entitled to a new trial because of the inaccurate closing by the Commonwealth?

 Zewe initially contends that he proved his insanity as a matter of law and, therefore, should be granted a new trial. The law in Pennsylvania, however, states that if there is sufficient evidence for a defendant to raise the issue of insanity, the burden is on the Commonwealth to prove the defendant's sanity beyond a reasonable doubt. *Commonwealth v. Ruth*, 309 Pa.Super. 458, 455 A.2d 700 (1983). This places the decision of whether or not the defendant is legally insane within the discretion of the jury rather than the judge, who decides matters of law. Therefore, because the determination of the defendant's sanity is a matter of fact to be decided by a jury, the first portion of Zewe's first claim has no merit.

 Zewe also claims that the verdict is against the weight of the evidence. Where issues of weight of the evidence are concerned, it is not the function of an appellate court to substitute its judgment based on a cold record for that of the trial court. *Commonwealth v. Paquette*, 451 Pa.

250, 301 A.2d 837, 841 (1973); *McElrath v. Commonwealth*, 405 Pa.Super. 431, 443, 592 A.2d 740, 745 (1991). A new trial is warranted on a challenge to the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. *McElrath* at 441, 592 A.2d at 745. Furthermore, issues of credibility are left to the trier of fact; the jury is free to accept all, part, or none of the witness testimony. *Commonwealth v. Pirela,* 398 Pa.Super. 76, 82, 580 A.2d 848, 852 (1990), *appeal denied,* 527 Pa. 672, 594 A.2d 658 (1991); *Commonwealth v. Vitacolonna,* 297 Pa.Super. 284, 443 A.2d 838, 841 (1982). Additionally, where evidence is conflicting, the credibility of the witnesses is solely for the jury and, if its finding is supported by the record, the verdict will not be disturbed. *Commonwealth v. Manchas,* 430 Pa.Super. 63, 71, 633 A.2d 618, 623 (1993).

Here, numerous eyewitnesses testified at trial as to Zewe's demeanor before, during, and after the shooting, as well as recounted comments he made. The jury heard testimony that in the past, Zewe had been told by voices in his head to hurt people, but had been able to resist them. They also heard testimony that Zewe thought that people at the party had obtained a gun from the police and were going to try to shoot him and he had to protect himself, yet Zewe did not attempt to protect himself from the police when they took him into custody.

Zewe's expert witness testified that Zewe was legally insane at the time of the killings. Zewe asserts that his expert testimony outweighs that of the Commonwealth's lay witnesses' testimony. This court has held, however, that:

It seems clear that the law in Pennsylvania is that evidence of lay witnesses alone can be sufficient to establish the sanity of a defendant who has offered expert testimony as to his insanity. The Commonwealth may meet its burden by testimony concerning the defendant's actions, conversations, and statements at the time of the crimes from which the jury can infer that he knew what he was doing when he committed the crimes and that he knew that his actions were wrong.

*Commonwealth v. Young,* 276 Pa.Super. 409, 413, 419 A.2d 523, 526–27 (1980). *See also Commonwealth v. Scarborough,* 491 Pa. 300, 308, 421 A.2d 147, 151 (1980) (it is up to the factfinder to determine the weight and credibility of the evidence, even psychiatric testimony).

In this case, the jury had ample evidence upon which to judge Zewe's sanity at the time of the shootings. The fact that the jury believed the testimony of several lay witnesses over that of the testimony proffered by Zewe's expert certainly does not shock the court's sense of justice. We conclude that the verdict was not against the weight of the evidence.

 Zewe next asserts that he did not receive a fair trial because the trial court refused to instruct the jurors that they could not ignore the expert's opinion and could not afford it the same weight as they would testimony of other witnesses. As was stated previously, the law in Pennsylvania is that it is up to the jury to determine how much weight to afford the testimony of witnesses. *Scarborough,* 491 Pa. at 308, 421 A.2d at 151. Based upon this reading of the law in Pennsylvania, the trial court properly refused to utilize Zewe's jury instruction and instead relied on an instruction that is in substantial conformity with the Pennsylvania Suggested Standard Criminal Jury Instructions. *See* Pa.S.S.J.I. (Crim) § 4.10A.

 Zewe's third claim of error states that the trial court erroneously permitted the Commonwealth to cross-examine his expert, Dr. Martone, on irrelevant and immaterial matters. Zewe's argument on this matter, however, is limited to a general discussion of why Zewe feels that the cross-examination was improper with no citation to relevant authorities.[6] This court has held that the argument section of an appellant's brief must include relevant discussion of points raised along with citations to pertinent authorities. *Commonwealth v. Rodgers,* 413 Pa.Super. 498, 605 A.2d 1228 (1992). Because Zewe's argument on this issue contained only vacuous

6. Pa.R.A.P. 2119(a) states, in part:
 The argument shall ... have ... the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

claims and not a single citation to relevant law, we find this issue waived.

Zewe next contends that the verdict of guilty but mentally ill deprived him of due process and equal protection. Pennsylvania's guilty but mentally ill statute, found at 18 Pa.C.S.A. § 314, states:

> (a) **General rule.**—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.
>
> (c) **Definitions.**—For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):
>
> (1) **"Mentally ill."** One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
>
> (2) **"Legal insanity."** At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know what he was doing was wrong.

(d) **Common law M'Naghten's Rule preserved.**—Nothing in this section shall be deemed to repeal or otherwise abrogate the common law defense of insanity (M'Naghten's Rule) in effect in this Commonwealth on the effective date of this section.

 This court's decision in *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106 (1988), *alloc. denied,* 522 Pa. 603, 562 A.2d 826 (1989), controls the issue of whether the "guilty but mentally ill" statute runs afoul of the State or Federal Constitution. In *Trill* the challenge to 18 Pa.C.S.A. § 314 was almost identical to the one set forth by Zewe. This court held:

The equal protection clauses of the fourteenth amendment of the United States Constitution and article I, section 2 of the Pennsylvania Constitution require the state to afford its citizens equal protection of the laws. "The Equal Protection Clause prohibits differences in treatment of similarly situated persons based upon a constitutionally suspect standard (race or religion) or other classifications lacking in rational justification." ( ... ) However, the Commonwealth of Pennsylvania is not required to treat all citizens exactly alike. Differential treatment of citizens is permissible where the actions are based on criteria which are reasonably related to the purpose of a legislative enactment and facts exist justifying the disparate treatment.

\* \* \* \* \* \*

Under the rational basis test, in order for 18 Pa.C.S.A. § 314 to pass constitutional muster on equal protection grounds, the classification drawn by the statute "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the legislation so that all persons similarly circumstanced shall be treated alike." ( ... ) As mentioned earlier in our opinion, the legislative enactment of the guilty but mentally ill verdict was merely the statutory articulation of our legislature's desire to allow the finder of fact to hold responsible those mentally ill defendants who deviate from the laws of this Commonwealth, while at the same time providing them with the humane psychiatric treatment for their mental infirmities. Our legislature perceived a problem with the disposition of mentally ill defendants under the traditional "guilty," "not guilty," and "not guilty by reason of insanity" verdicts. Consequently, they adopted the verdict of guilty but mentally ill with the intention of correcting this shortcoming of the criminal justice system. Concomitantly, they hoped to limit the number of persons, who, in the eyes of the legislature, were improperly being relieved of all criminal responsibility through utilization of the insanity verdict. There is nothing impermissible about such a purpose. It is well within the power of Pennsylvania's

lawmaking body to attempt to cure what it perceives to be a defect in the law. We believe that this carefully drafted legislation certainly bears a rational relationship to meeting the goals articulated above. Additionally, the inclusion of treatment provisions for guilty but mentally ill defendants rationally furthers the legitimate, articulated state purpose of providing for the health and welfare of all Pennsylvania citizens, including those who are adjudicated mentally ill and the public which is indirectly benefitted by having such individuals treated. ( . . . ) Consequently, we find no merit in Trill's claim that 18 Pa.C.S. § 314 is unconstitutional under either state or federal standards of equal protection.

*Commonwealth v. Trill,* 374 Pa.Super. at 581, 543 A.2d at 1122–1124.

In so holding, this court explained that the Pennsylvania "guilty but mentally ill" statute creates neither a suspect class nor implicates a fundamental right; therefore, any analysis of its constitutionality warrants the utilization of the rational basis test. Upon examining the statute to see if it violated state due process requirements, this court found that the statute was not vague, it did not encourage arbitrary convictions, compromise verdicts or jury confusion, and, therefore, was not violative of state of federal due process requirements. *Id.* at 585, 543 A.2d at 1124–1130. As *Trill* is controlling law in Pennsylvania, this claim must fail.

Similarly, Zewe's fifth and sixth claims of error involve constitutional issues. Based on our previous discussion, we find that Zewe's claim that the "guilty but mentally ill" statute is unconstitutional must fail.

Zewe next claims that he is entitled to a new trial because the trial court erred in instructing the jury. Our standard of review in this matter is well settled:

The scope of appellate review of a jury charge for reversible and prejudicial error requires that the charge be evaluated and considered as a whole. The general effect of the jury charge controls because error will not be predicated upon isolated excerpts from the charge. Further, a trial court's

deviation from the express language of the statutory instruction or a technical inaccuracy in the jury instruction which nevertheless adequately, accurately, and clearly expresses the law to the jury will not mandate reversal. *Trill,* 374 Pa.Super. at 565, 543 A.2d at 1114 (citations omitted).

Zewe first objects to the trial court's instruction to the jury regarding mental illness. He claims that 18 Pa.C.S.A. § 314 "uses lack of 'substantial capacity' in defining mental illness." According to Zewe, Judge Penkower committed reversible error when he defined legal insanity as requiring that the actor in question was "either incapable of knowing what he was doing, [or] is incapable of judging that it is wrong." Zewe took special exception to the use of the word "incapable" in the instruction.

"Mentally ill" and "legal insanity" are distinct concepts and each has a separate definition under 18 Pa.C.S.A. § 314. Although "incapable" is not used in the statutory definition of "legal insanity," it is used in the Pennsylvania Suggested Standard Criminal Jury Instructions. *See* Pa. S.S.J.I. (Crim) § 5.01A. Even if Judge Penkower's instruction differed from the one suggested by the Pennsylvania Bar, as long as it clearly stated the law to the jury, there are no grounds for reversal.

Zewe also objected to Judge Penkower's instruction to the jury regarding manslaughter and civil liability. These charges also plainly and accurately stated the law to the jury and, therefore, do not rise to the level of warranting a new trial.

Finally Zewe claims that he is entitled to a new trial because of an improper closing by the Commonwealth. Zewe's brief, however, is insufficient to present any issues for our review. Like his third claim, Zewe fails to comply with Pa.R.A.P. 2119(a), requiring that issues on appeal must be properly discussed and supported by authority in the appellant's brief. Zewe makes only a bald assertion that the Commonwealth's closing was improper and backs it up with no citation to relevant law. *See Rodgers, supra* at 199. In

addition, Zewe's brief contains only a general reference to where the alleged improper statement might be located.[7] For the reasons set out above, we find Zewe has waived his right to appellate review on this issue.

Judgment of sentence affirmed.

FORD ELLIOTT, J., files a Concurring Statement.

FORD ELLIOTT, Judge, concurring:

I join in the opinion of the majority, although I find appellant's equal protection and due process issues to be compelling. As I believe that the Constitutional questions presented by appellant are controlled by this court's decision in *Commonwealth v. Trill, supra,* at 374 Pa.Super. 549, 543 A.2d 1106, this court has no authority to overturn or reconsider that decision, and therefore appellant's arguments must await review by our supreme court.

---

**7.** Pa.R.A.P. 2119(e) states:

Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross reference to the page or pages of the statement of the case which set forth the information relating thereto required pursuant to Rule 2117(c) (statement of place of raising or preservation of issues), or substantially the same information.