J-A18043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| C.A.H. | |
| Appellant | No. 628 MDA 2013 |

Appeal from the Judgment of Sentence March 4, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0002501-2011

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 26, 2014**

C.A.H. appeals from the judgment of sentence entered in the Court of Common Pleas of Luzerne County.  After our review, we affirm on the opinion authored by the Honorable Tina Polachek Gartley.

C.A.H., the natural mother of C.C., was charged with rape of a child,[1] criminal conspiracy (rape of a child),[2] incest,[3] corruption of minors,[4] and endangering the welfare of children.[5]  C.A.H. began the abuse when her son

_____

[1] 18 Pa.C.S. § 3121(c).

[2] 18 Pa.C.S § 903.

[3] 18 Pa.C.S. § 4302.

[4] 18 Pa.C.S. §6301(a)1.

[5] 18 Pa.C.S. §4304(a)(1).

was eight years old, and it continued until he was twelve. C.C. testified that he was home-schooled, watched pornography, and that on his eighth birthday his father made him have sex with C.A.H. Thereafter, C.C. had sex with C.A.H., while his father watched, approximately four times each week.

Following trial, a jury convicted C.A.H. of all charges. The Sexual Offenders Assessment Board (SOAB) evaluated C.A.H. and determined she was a sexually violent predator (SVP). The court sentenced C.A.H. to an aggregate term of imprisonment of 20 years and 9 months to 41 years and 6 months (249 months to 498 months). C.A.H. filed a notice of appeal. On April 3, 2013, the trial court ordered C.A.H. to file a Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal. On April 23, 2013, C.A.H. filed her Rule 1925(b) Statement, raising 27 claims of error. On appeal, C.A.H. raises the following issues:

1. Was [C.A.H.] denied her right to a fair trial by the lower court's error in refusing to have the alleged Child victim undergo psychological and psychiatric examinations to determine his competency to testify?

2. Was the [C.A.H.] denied a fair trial when the lower court erred in finding the child competent to testify in this case, even after the District Attorney's Office provided copies of records and reports of interviews where the Child contradicted the accusations previously made concerning the instant charges against [C.A.H.]?

3. Was [C.A.H.] denied a fair trial when the lower court erred in failing to dismiss the charges or in permitting the Child to testify even after the District Attorney's Office provided copies of records and reports of interviews wherein it was disclosed that

the Child was promised that he "would be able to testify in a private room alone" if he agreed to testify against his parents on the current charges?

4. Was [C.A.H.] denied a fair trial when the court improperly permitted the Commonwealth to introduce evidence that C.C. had killed cats while living with his parents, as a result of his alleged abuse?[6]

5. Did the court below err in not instructing the jury that: A) the testimony of the Child was rendered suspect because of lack of prompt complaint and that it is a factor that the jury must consider as to the sincerity of the Child's complaint, and may justifiably produce doubt as to whether the offense indeed occurred, or whether it was a recent fabrication of the Child; and that B) the Child's motive in making the complaints against the [C.A.H.] following his considerable period of silence was relevant as affecting the child's veracity?

6. Whether the court erred in denying [C.A.H.'s] motion for discovery of certain records and material in the possession of the Wyoming County Children and Youth Services involving [P.P.]?

7. Did the lower court violate [C.A.H.'s] rights pursuant to the confrontation and due process clauses of the Pennsylvania and United States Constitutions, in denying [C.A.H.'s] right to impeach the credibility of the Child, [P.P.], and other Commonwealth witnesses with the hereinbefore mentioned records of the Luzerne County Child Advocacy Center and Wyoming

_____

[6] We note that in addition to the trial court's conclusion that this issue is waived for failure to place an objection on the record, see trial court opinion, at p. 5, C.A.H. does not develop any argument on this claim in her appellate brief. "When the appellant fails to adequately develop his argument, meaningful appellate review is not possible. This Court will not act as new counsel." **Commonwealth v. Genovese**, 675 A.2d 331, 334 (1996) (citing Pa.R.A.P. 2119(a)). **See also Commonwealth v. Zewe,** 663 A.2d 195, 199 (1995).

County Children & Youth Services which may have been reflective of the motive or bias of the Child and/or [P.P.]?

8. Did the lower court err in permitting the Child and [P.P.] to testify even after it was disclosed that the Child had complained that [P.P.], who was charged with the Child's custody and care, was improperly communicating with him concerning the instant case and had to be warned about her interference in this case?

We have reviewed the parties' briefs, the record, and the relevant law, and we find that the trial court's opinion correctly disposes of the issues C.A.H. raises on appeal. *See* Trial Court Opinion, 12/30/2013. Accordingly, we affirm the judgment of sentence based on Judge Polachek Gartley's opinion, and we direct counsel to attach a copy of this opinion in the event of further proceedings.

Judgment of sentence affirmed.

WECHT, J., concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: OF LUZERNE COUNTY

v. : CRIMINAL DIVISION

C███ A██ H███ : NO. 2501 OF 2011

Defendant :

............................................................................................................................

## OPINION

Before the Court is the Appeal of the Defendant, C██ A██ H██, claiming the Trial Court committed twenty-seven (27) errors.

### Procedural History:

Following a trial by jury, the Defendant was found guilty of Count 1, Rape of a Child, 18 Pa. C.S.A. § 3121(C), a felony of the first degree; Count 2, Criminal Conspiracy (Rape of Child), 18 Pa. C.S.A. § 903, a felony of the first degree; Count 3, Incest, 18 Pa. C.S.A. § 4302, a felony of the second degree; Count 4, Corruption of Minors, 18 Pa. C.S.A. § 6301(A)1, a misdemeanor of the first degree; and Counts 5,6 and 7, Endangering Welfare of Children, 18 Pa. C.S.A. § 4304(A)1, felonies of the third degree.

On March 4, 2013 this Court sentenced the Defendant to an aggregate sentence of twenty (20) years, nine (9) months to forty one (41) years, six (6) months in a state correctional facility

On April 3, 2013 the Defendant filed a Notice of Appeal with the Luzerne County Clerk of Courts.

1

On April 3, 2013, this Court issued an order directing the Defendant to file of record a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) and serve a copy of same upon the District Attorney and this Court pursuant to Pa. R.A.P. 1925(b)(1).

On April 23, 2013 the Defendant filed a Concise Statement of Errors Complained of on Appeal alleging twenty-seven (27) errors of the Trial Court.

On May 2, 2013 the Commonwealth was granted an extension of thirty (30) days after receipt of all ordered transcripts to file a Response to the Concise Statement of Matters Complained of on Appeal. Thereafter a significant delay occurred in the receipt of the transcripts.

The Commonwealth filed their Response on September 9, 2013.

## Summary of Factual History:

The Defendant, C▨▨ A▨ H▨▨, was charged with having a sexual relationship with her son, hereinafter referred to as "Child". The relationship began when the Child was eight (8) years old and continued until he was twelve (12) years of age. The sexual relationship was not discovered until several months after the Child was removed from the Defendant's home due to the home's unsanitary conditions. At the time of his removal from the residence, the house was in deplorable condition in that it overwhelmingly smelled of human urine and the walls, carpet and the sink were visibly filthy. There was garbage strewn throughout the residence, rotten food on the kitchen counters and small flies and random insects flying throughout the kitchen. The house was also infested with cats that Defendant would catch and raise. The floors were covered in dirt and filth and were sticky to the touch. The Child was covered in dirt and

2

smelled of body odor and urine. The officer required the Child to take an immediate shower at the local ambulance company due to the overwhelming smell. The child was taken into protective custody by Luzerne County Children & Youth and at the Defendant's request, the Child went to live with the Defendant's female cousin, P████ P███.

The Child attested that when he resided with his parents he rarely bathed or showered and recalled showering once a month. He rarely brushed his teeth, did not cut his own food, and did not get dressed or change his clothes for significant periods of time. The Child testified that he ate with his hands. He noted that he, his father and his autistic uncle would urinate on the floor in the house. He also recollected having flee bites, especially during the summer months.

Upon residing with Ms. P███, the Child ate with his hands, did not know how to use a knife, shower, brush his teeth, button, zip or tie. The child's eyes were sensitive to light and he needed glasses. Although his parents claimed he was cyber schooled through Commonwealth Connections Academy, the Child did not know how to use the computer for school work but stated that he knew how to use the computer to watch pornography. The Child masturbated in front of people on the outside of his clothes and stared at women's chests. When he would get mad at Ms. P██, he would urinate on the floor and on one occasion killed Ms. P████ cat.

The Child also would lie to avoid getting into trouble. In January of 2011, when Ms. P███ turned on the shower for the Child, he pulled down his pants and underwear and asked Ms. P██ if she would be his mother. After Ms. P███ scolded the Child for his actions, she explained that mothers do not have sexual relations with their children.

3

The following day, Ms. P████ enrolled the Child in therapy at the Children's Service Center.

At trial, the Child testified that he had a sexual relationship with his mother since he was eight (8) years old. His father, the co-defendant, R████ C██████, began showing him pornography at the age of seven (7) and on his eighth birthday his father called him upstairs to have sex with his mother. He attested that he had sex with his mother approximately four (4) times a week usually while his father observed. He noted that his father watched the sexual acts and coached him as to how to better perform. He further testified that there were times when his mother forced him to have sex and out of anger he would kill one of her cats. In detail he explained how he boxed the cats until they died.

The Defendant denied having a sexual relationship with her son. She testified that she is not capable of having sexual relations because she was in a car accident that ruined her back. Yet she testified that after the accident that she continued to go to line dancing once a week. She also testified that she did clean her house and referred to herself as a "clean freak" and a "germaphobe."

The child's father, R████ C██████, testified that he never showed pornography to his son. He testified that it was impossible for his wife to have sexual relations with their son because his wife said it never happened.

## Issues on Appeal:

As noted, the Defendant raises twenty-seven (27) Issues for Appeal. None of the issues raised, however, have any merit. Each of the twenty-seven (27) Issues is addressed below.

4

1. The Defendant argues that he was denied a fair trial when the Court permitted the Commonwealth to introduce evidence that the Defendant's son killed cats while living with his parents as a result of the alleged abuse.

The Defendant argues that she was denied a fair trial when the Court permitted the Commonwealth to introduce evidence of the Child killing cats. The Defendant, however, never objected to the Commonwealth's introduction of evidence that the Defendant's son killed cats while living with his parents as a result of the alleged abuse. Consequently, the Defendant waived her right to appeal the Commonwealth's introduction of evidence that the Child killed his mother's cats. Issues must be preserved at each and every stage of review; otherwise, they are deemed waived and cannot subsequently be raised on appeal. *Commonwealth v. Burchard, 349 Pa.Super. 456, 459, 503 A.2d 936, 937 (1986).*

Next, the Defendant argues that the Court erred when it found the Child competent to testify.

2. The Court erred when it denied the Defendant's Motion that the Court order psychological and psychiatric examinations of the Child to assess his competency to testify.

3. The Court erred when it denied the Defendant's Motion that the Court order psychological and psychiatric examinations of the Child to assess whether the child was prone to lie or his reliability as a factual witness to testify in the case.

4. The Court erred in finding the Child competent to testify, even after the Commonwealth provided copies of records and reports of interviews wherein the Child contradicted the accusations previously made concerning the instant charges against the Defendant.

5. The Court erred in finding the Child competent to testify, even after the Commonwealth provided copies of records and reports of interviews wherein it was disclosed that the Child was promised that he "would be able to testify in a private room alone" if he agreed to testify against his parents on the current charges.

The Court did not err when it denied Defendant's request for psychological and psychiatric examinations and found the Child competent to testify. The general rule in Pennsylvania is that every person is presumed competent to be a witness. Pa.R.E. 601(a). *Com. v. Delbridge*, 578 Pa. 641, 662, 855 A.2d 27, 39 (2003). Presently, the prevailing rule is that competency is presumed where the child is more than 14 years of age. *Rosche v. McCoy*, 397 Pa. 615, 621, 156 A.2d 307, 310 (1959). The Child herein was 14 years old at the time of trial. The Child was, therefore, presumed competent to testify.

The party alleging a witness is incompetent to testify must prove that contention by clear and convincing evidence. *Com. v. Bolch*, 2009 Pa. Super. 195, 982 A.2d 102, 110 (Pa. Super. Ct. 2009). A court, therefore, ought not to order an involuntary psychiatric examination of a witness unless the record unequivocally demonstrates a compelling need for the examination. *Id.* The basis of the Defendant's request for a psychiatric examination of the Child was that the Child made some contradictory statements. Contradictory statements are subject to cross examination and do not unequivocally demonstrate a compelling need for a psychological or psychiatric examination. Therefore, Defendant's request was properly denied.

In alleged error 6, Defendant argues that the Court erred when it failed to dismiss the charges against the Defendant based upon promises made to the Child that he would be able to testify in a private room.

> 6. The Court erred in failing to dismiss the charges against the Defendant after learning that the Child was promised that he "would be able to testify in a private room alone" if he agreed to testify against his parents on the current charges.

6

The record is clear that the child was never promised that he would be able to testify in a private room alone if he agreed to testify against his parents on the current charges. Detective Parker of the Luzerne County District Attorney's Office spoke to the Child about testifying in court. Although the Child may have thought that he would be able to testify in a private room alone, Detective Parker told the Child that was not what would happen as he would have to most likely testify in front of his parents, however, he would be able to look the other way and not look at them. (N.T. 7/13/2012 p. 31). (emphasis added). Since the involvement of Detective Parker and Attorney Roberts in this case, the Child knew that he would have to testify in open court. The Child testified at the preliminary hearing in front of his parents so he did know that he was going to have to testify at trial in front of his parents. (N.T. 7/13/2012 p. 33). Therefore, the Defendant's argument that the Court should have dismissed the charges for promises made to the Child was properly denied as no promises were made to the Child regarding his ability to testify in a private room.

Next, the Defendant argues the Court erred in permitting the Child and P█████ P██ to testify.

> 7. The Court erred in permitting the Child and P█████ P██ to testify after it was disclosed that the Child had complained that P█████ P██ who was charged with the Child's custody and care, was improperly communicating with him concerning the case and had to be warned about her interference in the case.

Defendant's argument has no merit. There was no evidence that P█████ P██ was improperly communicating with the Child concerning the case and that she had to be warned about her interference in the case. To the contrary, Ms. P██ inquired of Assistant District Attorney Roberts if they should be discussing the case with the Child. Attorney Roberts told them that she did not want them talking to the Child about the

7

case and that the only people that he should be talking to about the case are his counselors. (N.T. 7/13/2012 p.30).

Defendant also argues that the Court erred when it denied the Defendant's requests for discovery.

8. The Court erred in denying the Defendant's Motion for Discovery of certain records and materials in the possession of the Luzerne County Child Advocacy Center involving the Child.

9. The Court violated the Defendant's due process rights and right of confrontation provisions of the Pennsylvania and United States Constitutions when it denied the Defendant the right to impeach the credibility of the Child, P████ P██ and other Commonwealth witnesses with the records and materials in the possession of the Luzerne County Child Advocacy Center involving the Child which may have been reflective of the motive or bias of the Child and P██████ P██.

10. The Court erred in denying the Defendant's Motion for discovery of records and materials in the possession of the Wyoming County Children and Youth Services involving P████ P██ because P██████ P██s credibility was in issue.

11. The Court violated the Defendant's due process rights and right of confrontation provisions of the Pennsylvania and United States Constitutions when it denied the Defendant the right to impeach the credibility of P██████ P██ with the records of the Wyoming County Children and Youth Services which may have been reflective of the motive or bias of P██████ P████.

12. The Court erred in denying the Defendant's Motion that the Court Order the release and production of any internal investigations, records, citizen's complaints and/or personnel files of the agents of the Luzerne County Children & Youth Services and the Luzerne County Child Advocacy Center, as such records were relative to the credibility and truthfulness of representatives and employees of the agency who were or might have been called as witnesses in this matter.

13. The Court erred in not conducting an in camera examination of the Luzerne County Children & Youth Services and the Luzerne County Child Advocacy Center prosecution files and reports to determine their relevance within the meaning of the law and what may have been discoverable.

14. The Court's denial of the Defendant's discovery requests of the Luzerne County Children & Youth Services and the Luzerne County

8

Child Advocacy Center records and the Court's refusal to conduct an in camera inspection violated the Defendant's rights under the 6th, 10th, 11th, 15th and 14th Amendments to the United States Constitution and the Pennsylvania Constitution - - her right to due process, to a fair trial, to the effective assistance of counsel, to prepare a defense, to confront and cross-examine witnesses and impeach their credibility.

The pre-trial record is clear that all of the Luzerne County Children and Youth Services CPS file records as well as the DVD's from the Child Advocacy Center that were in the possession of the Commonwealth were provided by the Commonwealth to counsel for Defendant. To further the Defendant's request for discovery, the trial court did provide defense counsel with two Orders for additional discovery of Luzerne County Children and Youth Services records. (N.T. 7/13/2012 pp. 3-10).

With respect to the Defendant's Motion for Discovery of records and/or complaints against Luzerne County Children and Youth Services workers and her request for records from the Luzerne County Child Advocacy Center, the trial court properly denied Defendant's Motions and informed the Defendant that the records from those agencies had to be subpoenaed. (N.T. 7/13/2012 pp.6, 22).

With respect to Defendant's Motion to obtain records from Wyoming County Children and Youth Services pertaining to the Child's caretaker, the Motion was properly denied. Defense counsel acknowledged that he did not know if the records existed, that the records would have nothing to do with the alleged victim and that the records were from sixteen (16) years ago. (N.T. pp.4-7).

Thus, based upon the pre-trial record, the errors raised by Defendant in paragraphs 8 through 14 have no merit. It is not the responsibility of the Trial Court to conduct discovery for the Defendant or permit a fishing expedition for records that are remote and protected from disclosure.

.The Defendant also argues that the Court erred when it failed to instruct the jury regarding the Child's lack of prompt complaint. Specifically, the Defendant argues:

15. The Court erred in not instructing the jury that the testimony of the Child was rendered suspect because of lack of prompt complaint and bias against the Defendant.

16. The Court erred in not instructing the jury that the lack of prompt complaint by the Child is a factor that the jury must consider as to the sincerity of the Child's complaint.

17. The Court erred in not instructing the jury that the lack of prompt complaint by the Child may justifiably produce doubt as to whether the offense indeed occurred, or whether it was a recent fabrication of the Child.

18. The Court erred in not instructing the jury that the Child's motive in making the complaints against the Defendant following his considerable period of silence was relevant as affecting the Child's veracity.

The Defendant's claims of error in paragraphs 15 through 18 must also fail. As per defense counsel's request, the Court read the instruction to the jury on the Child's delay in making a prompt complaint. (12/12/12 N.T. pp. 423-432, 490-491). The Defendant never objected to the proposed jury instruction nor proposed that the jury be instructed in any other way. A defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeal. *Com. v. Corley, 432 Pa. Super. 371, 381, 638 A.2d 985, 990 (1994).* Therefore, Defendant's challenge to the jury instruction as given must be precluded on appeal.

The Defendant's additional claims of error alleged in paragraphs 19, 20 and 21 must also fail. Defendant's arguments go to the sufficiency of the evidence.

19. The Court erred in not finding that the charges had been fabricated by the Child and P~~aught~~ P~~ugh~~ and that the Defendant was innocent as a matter of law.

20. The Court erred in not ruling that the evidence was insufficient as a matter of law to establish the Defendant's guilt beyond a reasonable doubt on the charges.

10

21. The Court erred in not finding that the Defendant was innocent as a matter of law as a result of the Childs in-court testimony that he lied numerous times regarding his statements to prosecutors and child welfare authorities.

In reviewing sufficiency of evidence claims, the Superior Court must determine whether, viewing all of the evidence at trial, as well as all of the reasonable inferences to be drawn therefrom, in a light most favorable to Commonwealth, the jury could have found that each element of offense was proven beyond a reasonable doubt, and both direct and circumstantial can be considered equally when assessing sufficiency of evidence. *Com. v. Woodruff, 447 Pa. Super. 222, 668 A.2d 1158 (1995).* There is no question here that when viewing the evidence in a light most favorable to the Commonwealth that there was sufficient evidence to establish Defendant's guilt on all charges beyond a reasonable doubt. Therefore, Defendant's claims of alleged error must fail.

Next, the Defendant argues that the Court erred when it classified the Defendant as a sexually violent predator.

22. The Court erred in finding that the Defendant be classified as a sexually violent predator.

To help determine if a Defendant should be classified as a sexually violent predator, the trial judge orders an assessment to be done by the Sexual Offender Assessment Board ("SOAB"). 42 Pa. C.S. §9799.24. At a hearing prior to sentencing the Commonwealth must establish by clear and convincing evidence that the Defendant has been convicted of a statutorily specified offense and has been determined, through a statutorily designated process, to have a mental abnormality or personality disorder that makes the defendant likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9799.12, "Sexually violent predator."

11

At the Sexual Offender Assessment Board Hearing in this case, it was revealed that the Defendant declined to participate in the sexual offender assessment and refused to have her own expert appointed for an assessment. (3/4/13 N.T. pp. 3-14, 35-38).

The Commonwealth presented the expert testimony of Ms. Paula Burst at the hearing. Ms. Burst prepared a report on behalf of the Sexual Offenders Assessment Board dated February 13, 2013. In connection with the preparation of her report, Ms. Burst reviewed the Sexual Offender Assessment Board investigator's report; the lack of response of the defense attorney; the Luzerne County Court Order for the assessment; the criminal information regarding 2501 of 2011; the police criminal complaint and affidavit of probable cause; Luzerne County Detective Supplemental Report; Child Protective Services Investigation report; and the psychological evaluation on Ms. H▬ C▬ and the victim. (3/4/13 N.T. p.23). Ms. Burst testified that when assessing whether or not a Defendant is a sexually violent predator, she must take into consideration two statutory criteria. (3/14/13 N.T. pp. 24-24). The statute requires her to address whether or not the Defendant possesses either a mental abnormality or personality disorder that makes it likely that they will engage in predatory sexual behavior. (3/14/13 N.T. p. 23).

Ms. Burst testified that the Defendant met the statutory criteria to be classified as a sexually violent predator. Ms. Burst testified that the Defendant met the mental abnormality for the diagnostic classification for pedophilia, the first prong of the assessment criteria, as the Defendant sexually assaulted her minor son for over a 4-year period on numerous occasions and in multiple ways more than once a week.

(3/14/13 N.T. p. 24). Ms. Burst further testified that the Defendant also met the second prong of the assessment criteria, as the Defendant's offenses and behavior was predatory in nature. (3/14/13 N.T. p. 25). The Defendant and the Co-defendant began grooming the minor victim when he was only 7 years old by showing him pornography, viewing it with him; and, thereafter, proceeded to sexually assault this child over a four year period on a very regular basis. (3/14/13 N.T. p. 25). The victim in this case was the Defendant's own child who was completely dependent on her and the Defendant twisted that relationship to satisfy her sexual deviancies. (3/14/13 N.T. p. 26). Ms. Burst further opined that it is likely that Defendant will engage in another sexual offense because pedophilia is a lifetime disorder with no cure and inherently makes one have an internal drive towards sexual reoffending and predisposes that offender towards sexual reoffending. (3/14/13 N.T. p. 25).

Based upon the credible expert opinion testimony of Ms. Brust of the Sexual Offender Assessment Board, this Court found Ms. Burst established by clear and convincing evidence that the Defendant met the two criteria necessary to be deemed a sexually violent predator pursuant to the Pennsylvania statute. (3/4/13 N.T. p. 39). This Court stated:

> "The Court finds the that the testimony that was provided here today to be credible; and that by that testimony, the witness has clearly established by clear and convincing evidence that the Defendant in this case meets the two criteria necessary to be deemed a sexually violent predator pursuant to the Pennsylvania statute.
> Specifically with regard to the mental abnormality as being the first prong, the testimony clearly established that the requisite elements were, in fact, met in this matter and that Ms. H⬛⬛ [sic] likelihood of reoffending was clearly established; and that she does have the disorder of pedophilia in this matter.
> And, secondly, with regard to the second statutory element, the testimony is hereby deemed credible and has proven beyond clear and

13

convincing evidence that the issue of predatory behavior and the predatory aspect in this case has been met based upon the facts in this case as provided during the trial and during the course of the investigation by the Sexual Assessment Board.

Therefore, the Court hereby deems that C████ H███ does, in fact, meet the criteria set forth in the statute to be classified as a sexually violent predator, subject to the enhanced penalties and the SORNA requirements." (3/4/13 N.T. pp. 38-39).

Therefore, based upon this Court's findings, the Court did not err when it classified the Defendant as a sexually violent predator.

The Defendant also claims the Court committed errors during voir dire of the jurors and when giving jury instructions.

23. The Court erred in refusing to inquire of potential jurors the questions submitted in writing by the Defendant, or in the alternative, to permit defense counsel to do so.

24. The Court erred in refusing to submit the instructions to the jury at the close of evidence that were submitted in writing by the Defendant, pursuant to Pa. R.Crim.P. 647.

The Court did not err when questioning or instructing the jury. Nor did the Defendant object to this Court's questioning or instructing of the jury. Therefore, any claim that the Court erred is without merit and waived.

The Defendant's arguments in 25, 26 and 27 also go to the sufficiency of the evidence.

25. The Court erred in denying the Defendant's Post-Trial Motions for a judgment of acquittal or a new trial because the verdict was based on insufficient evidence and/or was against the weight of the evidence.

26. The evidence submitted at trial by the Commonwealth was insufficient as a matter of law to establish the Defendant's guilt beyond a reasonable doubt on the charges.

27. The Court erred in denying the Defendant's Motions for judgment of acquittal or a new trial because the Commonwealth's principal witnesses gave contradictory and inconsistent testimony concerning material elements of the crimes charged thereby making the jury's verdict based on insufficient evidence.

14

Again, in reviewing sufficiency of evidence claims, the Superior Court must determine whether, viewing all of the evidence at trial, as well as all of the reasonable inferences to be drawn therefrom, in a light most favorable to the Commonwealth, the jury could have found that each element of offense was proven beyond a reasonable doubt, and both direct and circumstantial can be considered equally when assessing sufficiency of evidence. *Com. v. Woodruff, 447 Pa. Super. 222, 668 A.2d 1158 (1995).* There is no question that when viewing the evidence in a light most favorable to the Commonwealth here, that there was sufficient evidence to establish Defendant's guilt on all charges beyond a reasonable doubt. Therefore, Defendant's claims of alleged error must fail.

## END OF OPINION