J-A29027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN EDWARD HALL, II, | |
| Appellant | No. 358 WDA 2014 |

Appeal from the Judgment of Sentence entered January 23, 2014,
in the Court of Common Pleas of Erie County,
Criminal Division, at No(s): CP-25-CR-0000055-2013

BEFORE:  DONOHUE, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED November 3, 2014**

John Edward Hall, II, ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of sexual assault and indecent assault.[1]  We affirm.

The trial court summarized the factual and procedural posture as follows:

> On September 30, 2012, between 9:00 p.m. and 10:00 p.m., [the victim] and [her friend], both Penn State Behrend students, arrived at their college friends' off-campus house located at 4147 Pine Avenue, Erie, PA, for a party.  The party was held on the main floor.  [The victim] drank beer from the time she arrived until approximately 12:30 a.m.  During this time, she became intoxicated.

_____

[1] 18 Pa.C.S.A. § 3124.1 and 3126(a)(4).

*Retired Senior Judge specially assigned to Superior Court.

At 12:30 [a.]m., the victim went upstairs to a vacant bedroom, closed the door, and went to sleep alone fully clothed. (She was good friends with the residents and periodically visited the residence. She would occasionally stay in an unoccupied, upstairs bedroom.) During the evening, one of the residents observed that [the victim] was sleeping and "out cold." [The victim's friend] also went upstairs and fell asleep in a different bedroom.

Between 2:00 a.m. or 3:00 a.m., after the party ended, Appellant arrived at the house heavily intoxicated and carrying a half-full bottle of vodka. One of the residents told him he could stay and sleep on a bean bag located in the living room. Appellant continued to drink. One of the residents observed Appellant leave the living room, go to the kitchen and drink a glass of water.

At some point, Appellant went upstairs and entered the bedroom where the victim was sleeping. She did not awake until she felt Appellant manipulating her legs. She noticed her shirt and bra were pushed up to her neck and Appellant was removing her pants without her consent. She immediately told Appellant to stop and asked him who he was. When she tried to get up, Appellant pushed her back down on the bed. Appellant held her down and inserted his penis into her vagina without her consent. She grabbed his face and fought him off. Appellant left the room.

Seeking help, the victim went into the bedroom where [her friend] was sleeping. The victim found Appellant hiding behind a door and yelled at him to leave. Appellant ran out of the house.

After the assault, [the victim's friend] called the police. An individual at the residence called Appellant and put him on speaker phone. He described the victim's accusations and asked what happened. Appellant, sounding confused and heavily intoxicated, said that he was not sure.

The victim was then taken to the hospital for a forensic examination. She described the assault to the forensic examiner, Dr. Stephanie Larson, D.O. The victim also went to the police station and gave a statement to Erie Police Department Detective Michael Conway.

At trial, Appellant testified that the sexual activity was consensual.

On September 17, 2013, following a two day jury trial, Appellant was found guilty of the above offenses. On January 23, 2014, Appellant was sentenced to a term of 36 to 72 months of incarceration at Count 1 (sexual assault) and a concurrent term of 6 to 24 months of incarceration at Count 2 (indecent assault).

On January 31, 2014, Appellant filed a Motion For Post-Sentence Relief, which [the trial court] denied on February 4, 2014.

On March 3, 2014, Appellant filed a Notice of Appeal. On March 4, 2014, [the trial court] ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925. Appellant timely complied on March 19, 2014[.]

Trial Court Opinion, 4/28/14, at 1-3 (citations to notes of testimony and footnotes omitted).

Appellant presents three issues for our review:

I. Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that Appellant [] possessed the malice required to support a conviction for Sexual Assault and Indecent Assault?

II. Was the jury verdict of guilty against the weight of the evidence presented at trial?

III. Whether the trial court abused its discretion in admitting Dr. Stephanie Larson as an expert witness in the area of forensic investigations.

Appellant's Brief at 5.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions. When reviewing a sufficiency challenge:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa. Super. 2005) (citations omitted).

Appellant was convicted of sexual assault and indecent assault. Sexual assault occurs when "a person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." **18 Pa.C.S.A. § 3124.1**. Indecent assault occurs when "a person has indecent contact with the complainant, causes the complainant to have indecent contact with the person … for the purpose of arousing sexual desire in the person or the complainant and … the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring." **18 Pa.C.S.A. § 3126(a)(4)**.

Appellant argues that there was insufficient evidence to support his convictions because "the record, even when viewed in a light most favorable to the Commonwealth, does not establish that the Appellant was acting

without [the victim's] consent." Appellant's Brief at 17-18. Appellant further asserts that "both individuals were intoxicated on the evening in question … and [the victim's] memory is unclear as to the entire event. This clouded testimony is the only evidence that alleges that Appellant acted without the requisite consent." *Id*. at 18.

The trial court accurately explained why this issue is meritless:

> Here, the victim testified that Appellant assaulted her and she did not consent to sexual intercourse. Appellant testified that the victim consented. It was for the jury to determine credibility, and [the jury] was permitted to believe all, part, or none of the victim's testimony. *Commonwealth v. Andrulewicz*, 911 A.2d 162, 166, *citing Commonwealth v. Adams*, 882 A.2d 496, 499 (Pa. Super. 2005). Clearly, the jury believed the victim's testimony that she was sexually assaulted and rejected the Appellant's version. Furthermore, [the victim's] testimony established all the elements of the offenses, in particular, that she did not consent. *See also, Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (finding that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant); *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008) ("A rape victim's uncorroborated testimony to penal [sic] penetration is sufficient to establish sexual intercourse and thus support a rape conviction."). Accordingly, the evidence, as well as all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain the conviction.

Trial Court Opinion, 4/28/14, at 6.

It is uncontroverted that to prove sexual assault, the evidence must show that the complainant did not consent. **Commonwealth v. Duffy**, 832 A.2d 1132 (Pa. Super. 2003). The same is true for indecent assault. **Commonwealth v. Andrulewicz**, 911 A.2d 162 (Pa. Super. 2006). Here,

our review of the record confirms the trial court's recitation of the victim's testimony. The victim testified that on the night of the assault, she was drinking beer and was "buzzed lightly." N.T., 9/16/13, at 41-42, 44. The victim stated that she went to bed alone at 12:30 a.m. because she was "tired" and was planning to get up early. *Id*. at 44-45. The victim testified that she was fully clothed in jeans and a tee shirt when she went to bed. *Id*. at 45. In responding to the Commonwealth's direct examination, the victim testified:

> Q. What is the next thing you remember? Go ahead and tell the jury.
>
> A. I remember being woken up by someone moving my legs around, and my shirt had been pushed up too. My shirt and my bra had been pushed up to my neck and someone was pulling my pants off. And I started to get up and – 'cause I was like in a very deep sleep so it took me a minute to recognize what was going on. And I realized – and I immediately started to tell him to stop and ask him who he was. And he pushed me. I tried to sit up and he pushed me back down on the bed. I started grabbing at his face and [was] trying to get him off of me and he would hold me down. And I remember like grabbing at his face and feeling a full – like a beard. I'm sorry.
>
> Q. It's okay. Go ahead and keep telling what happened.
>
> A. And then he proceeded – he had sex with me after.
>
> Q. When you say he had sex with you, what part of his body was touching what part of your body?
>
> A. His penis was in my vagina.
>
> Q. Was it like that when you woke up?
>
> A. No. It hadn't been.
>
> Q. Okay. When you woke up, what clothing were you wearing?

A.     When I woke up I had my shirt and my bra around my neck and he was pulling my pants off and my underwear off.

Q.     And you said you did what?

A.     I immediately started to resist him.

Q.     Did you say anything?

A.     I said, "No.  Who are you?  Stop."

Q.     You had no idea who it was at this point?

A.     The room was completely dark.

Q.     When that happens, when you say, "No.  Who are you?  Stop.", what does this individual do next?

A.     He didn't stop.  He continued to hold me down.  And I ended up hitting him across the face, and then after that he did get off of me.

Q.     And he actually put his penis into your vagina?

A.     Yes.

Q.     Do you know for how long?

A.     I honestly can't give you a time frame.

Q.     And you said you ended up grabbing his face?

A.     Yes.

Q.     And that's when he got off of you?

A.     Yes.

Q.     What happens next?

A.     He got off of the bed and he stood up at the foot of the bed and I remember him pulling on his shirt.  It was a bright blue turquoise shirt.  And he had opened the door, and there was a light on out there so I was able to see his face whenever the door was opened on him.

Q.     At this point do you realize who it is?

A.     Yes.

Q.     What do you – who do you realize it is?

   A.     [Appellant].

*Id*. at 45-48.

   Given the foregoing, the victim's testimony was sufficient for the jury, sitting as fact-finder, to conclude that the victim did not consent to the sexual intercourse and indecent contact with Appellant, and that Appellant was guilty of sexual assault and indecent assault.  It is well-settled that it is the fact-finder's province to make credibility determinations, and the fact-finder may believe all, part, or none of a witness's testimony. ***Commonwealth v. Adams****,* 882 A.2d 496, 499 (Pa. Super. 2005). Moreover, the "uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant...." ***Commonwealth v. Charlton****,* 902 A.2d 554, 562 (Pa. Super. 2006). Accordingly, Appellant's sufficiency claim lacks merit.

   Appellant in his second issue challenges the weight of the evidence, and contends that "the evidence in this case weighs heavily against the verdict reached by the jury, and as such shocks one's sense of justice." Appellant's Brief at 19.  Appellant asserts that the victim's testimony was not credible because she testified that she positively identified Appellant, but "nonetheless ask[ed] [a resident of the house] if Appellant had been at the party that evening." *Id*.  Appellant further avers that the victim was "not entirely clear as to what happened on the evening in question due to her consumption of alcohol" and that her "testimony is not supported by physical

evidence." *Id*. at 19-20.  These assertions do not support a finding that the verdicts were against the weight of the evidence.

Our Supreme Court recently explained:

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* *Brown*, 648 A.2d at 1189.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (Pa. 1976).  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-1055 (Pa. 2013).

Consistent with Pa.R.Crim.P. 607(A)(3), Appellant filed a post-sentence motion in which he challenged the weight of the evidence and requested a new trial and/or judgment of acquittal.  Motion for Post-Sentence Relief, 1/31/14.  The trial court denied the motion by order dated February 4, 2014.  The trial court explained:

Appellant claims that the verdict was against the weight of the evidence because the Commonwealth did not offer credible

- 9 -

evidence to establish that Appellant acted without the victim's consent. This claim is meritless. …

***

Challenges to the sufficiency of the evidence and to the weight of the evidence are different. In the latter setting, the trial court is not required to view the evidence in the light most favorable to the verdict winner. The motion is addressed to the discretion of the trial court. The motion should be granted only if the court "concludes that despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict and that a serious miscarriage of justice may have occurred."

Appellant's claim that the verdict was against the weight of the evidence concedes there was sufficient evidence to support the jury's verdict.

As noted above, what the Appellant must establish is that the verdict was so contrary to the evidence as to shock one's sense of justice. Here, the victim's testimony was credible, and Appellant's version of the events and attempts to impeach her did not undermine her veracity. Moreover, the verdict clearly does not shock one's sense of justice.

Trial Court Opinion, 4/28/14, at 6-7 (citations omitted). Upon review of the record, we discern no abuse of discretion by the trial court in denying Appellant's challenge to the weight of the evidence.

In his third issue, Appellant asserts that "it was an abuse of discretion for the trial court to admit Dr. Larson as an expert witness" on the basis that Dr. Larson "did not possess the requisite skill, knowledge, or experience in forensic examinations of sexual assault victims to satisfy the qualifications of an expert witness." Appellant's Brief at 20-21.

We initially note that in contravention of Pa.R.A.P. 2119(a), Appellant has failed to properly develop his argument regarding the expert

qualification of Dr. Larson.  The argument section of Appellant's brief begins with citation to a single case, which states generally the abuse of discretion standard for the trial court's qualification of an expert witness, the "liberal" standard by which an expert may be qualified, and the qualifying test of "whether the witness has any reasonable pretension to specialized knowledge on the subject matter."  Appellant's Brief at 20, *citing* **Commonwealth v. Stallworth**, 781 A.2d 110 (Pa. 2001).  Then, Appellant briefly argues that the trial court should not have qualified Dr. Larson, a senior medical resident, as an expert witness because she had not previously been qualified as an expert witness, lacked "additional specialized training in the area of forensic examination", and had not authored "any articles or literature with respect to forensic examinations."  Id. at 20-21.[2]

Because Appellant fails to develop this argument with supporting citation to legal authority, his claim is waived.  **See Commonwealth v. Zewe**, 663 A.2d 195, 199 (Pa. Super. 1995) (the argument section of an appellant's brief must include relevant discussion of the points raised along with citation to pertinent authorities); **Commonwealth v. Owens**, 750 A.2d

---

[2] At trial, Appellant's counsel conceded that he did not "have any objection to [Dr. Larson] testifying as to the examination she performed, questions that were asked, and that process."  N.T., 9/17/13, at 51.  Appellant's counsel specifically objected to Dr. Larson's "qualifications", and the trial court overruled the objection.  *Id.*

872, 877 (Pa. Super. 2000) (failure to cite case law or other legal authority in support of an argument results in waiver).

Although we need not address the merits of this issue, we note that Appellant's contention that the trial court erred in qualifying Dr. Larson as an expert is not supported by the record. Dr. Larson testified to being a medical resident in emergency medicine. N.T., 9/17/13, at 45. As part of her residency training, Dr. Larson was taught to "do a Rape Kit" and forensic examination. *Id*. at 46. Dr. Larson specifically testified that she was a "specialized doctor in forensic assaults." *Id*. She testified that in her examinations she collected clothing, used a specialized camera called a colposcope, and interviewed the patient to learn what happened. *Id*. at 47. Dr. Larson distinguished forensic assaults from regular assaults:

> When someone undergoes – a victim undergoes a sexual assault, they are given the option to go to the hospital and have what is called a sexual assault examination done on them. That would be different than going to the hospital and having a normal exam done. What they do is, they collect a sexual assault evidence kit and it's somewhat invasive. There's a very large questionnaire and a lot of documentation that we do from it. And then we also do a physical examination. We get swabs and take samples of both their DNA as well as looking for foreign DNA. We do an invasive physical exam, both internal and external, and we collect multiple swabs and collect them as evidence for police to be examined.

*Id*. at 46-47.

In explaining its qualification of Dr. Larson as an expert witness, the trial court reasoned:

- 12 -

The qualification of a witness as an expert rests within the sound discretion of the trial court, and the court's determination in this regard will not be disturbed absent an abuse of discretion. See *Commonwealth v. Serge*, 837 A.2d 1255, 1260 (Pa. Super. 2003). As stated by this Court:

> The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Commonwealth v. Wallace*, 817 A.2d 485 (Pa. Super. 2002).... A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on **training and experience**. *Id*.

*Commonwealth v. Malseed*, 847 A.2d 112, 114 (Pa. Super. 2004) (emphasis in original) (quoting *Serge, supra*.).

*Commonwealth v. Toritto*, 67 A. 3d 29, 37 (Pa. Super. 2013)(*en banc*).

At trial, Dr. Larson opined that injuries are not always present in sexual assault cases. She indicated that the majority of sexual assault patients have no signs of physical injury. N.T. Trial (Day 2), 00/17/13, at 59. Prior to rendering her opinion, Dr. Larson testified to her specialized training and education in performing forensic examinations of sexual assault victims. See, N.T. Trial (Day 2), 09/17/13, at 46-49. She had previously examined over 40 victims and testified as a witness in one case, although not as an expert. *Id*., at 48-49. After its review, it was clear to this Court that she was qualified based upon her education, training and experience. [FN5: At some point, expert witnesses are qualified for the first time. This was that time for Dr. Larson.] Therefore, her testimony was admissible and this court properly permitted her to testify as an expert.

Trial Court Opinion, 4/28/14, at 8. We agree with the trial court's analysis, and thus find no abuse of discretion by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/3/2014