J-S19035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHAQUILLE  GURLEY, :
:
Appellant : No. 2553 EDA 2018

Appeal from the Judgment of Sentence Entered May 14, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007507-2015,
CP-51-CR-0012748-2015

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    Filed: August 20, 2020

Shaquille Gurley ("Gurley") appeals from the judgment of sentence imposed following his convictions of simple assault, aggravated assault, recklessly endangering another person, firearms not to be carried without a license, and carrying firearms in public.[1]  We affirm.

At approximately midnight on July 4, 2015, a fight broke out inside of the Eagle Bar, located near the corner of Germantown and Erie Avenues in North Philadelphia, Pennsylvania.  The fight involved approximately ten individuals, including Gurley.  The fight moved outside of the bar and onto the street.  Sometime thereafter, Gurley left the scene.  Gurley returned to the scene a short time later, where he fired gunshots into the crowd of individuals

---

[1] 18 Pa.C.S.A. §§ 2701(a), 2702(a), 2705, 6106(a)(1), 6108.

who had been involved in the fight as they stood on the street outside of the bar. Two individuals were shot as a result of the incident.

On July 8, 2015, two Philadelphia Police Officers on patrol heard several gunshots in the proximity of the Eagle Bar. The officers observed Gurley standing near that location. The officers saw him put a firearm inside of his waistband. The officers chased Gurley to a nearby house, where they recovered a loaded firearm in a bedroom. Gurley was arrested, and charged with firearms violations at docket number CP-51-CR-0007507-2015. Police successfully matched the firearm seized from the house at the time of Gurley's arrest to the firearm used in the July 4, 2015, shooting. Gurley was subsequently charged on September 23, 2015, with the offenses related to the shooting, at docket number CP-51-CR-0012748-2015.

On April 18, 2016, the trial court consolidated the charges at the two docket numbers for trial. A bench trial was held on September 19 and 20, 2017, during which the trial court heard testimony from Philadelphia Police Officer Ricardo Rosa and Detective Samuel Gonzalez ("Detective Gonzalez"); Raymond Brown ("Brown"), one of the victims; James Coley ("Coley"), the owner of the Eagle Bar, who observed the fight and the shooting; and Marchell Barksdale ("Barksdale"), Gurley's mother. At the conclusion of the bench trial, Gurley was convicted of the above-mentioned offenses.

On December 1, 2017, Gurley filed a post-trial Motion to set aside the verdict and/or for extraordinary relief. Gurley also filed a supplemental Motion

on February 13, 2018. The trial court conducted two separate hearings on Gurley's Motion on December 11, 2017, and February 26, 2018, during which it heard testimony from two separate witnesses, whom Gurley alleged would have provided exculpatory testimony had they been available to testify at Gurley's trial. The trial court denied Gurley's Motion.

On May 14, 2018, the trial court sentenced Gurley to an aggregate term of 14 to 28 years in prison. Gurley filed a post-sentence Motion, wherein he argued that the Commonwealth had failed to prove his guilt beyond a reasonable doubt; he was unable to present witnesses whose testimony would have changed the outcome of his trial; and his sentence was excessive. The trial court denied the Motion. Gurley filed two timely Notices of Appeal, one at each docket number, with both docket numbers listed on each Notice of Appeal. Gurley also filed two separate, but identical, court-ordered Pa.R.A.P. 1925(b) Concise Statements of matters complained of on appeal.

On December 5, 2018, this Court issued a Rule to Show Cause why Gurley's appeal should not be quashed in light of ***Commonwealth v. Walker***, 185 A.3d 969, 977 (Pa. 2018) (stating that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." (citing Pa.R.A.P. 341)). ***See also Commonwealth v. Creese***, 216 A.3d 1142, 1144 (Pa. Super. 2019) (quashing an appeal pursuant to ***Walker*** where the appellant filed a separate notice of appeal at each docket number, but where

- 3 -

each notice of appeal listed multiple docket numbers). Gurley filed a Response, and on December 10, 2018, this Court issued an Order discharging the Rule to Show Cause and deferring the issue to the merits panel.

Subsequently, this Court issued its decisions in **Commonwealth v. Johnson**, 2020 PA Super 164, at *12 (Pa. Super. filed July 9, 2020) (*en banc*) and **Commonwealth v. Larkin**, 2020 PA Super 163, at *3 (Pa. Super. filed July 9, 2020) (*en banc*), in which this Court held that where separate notices of appeal are filed at each docket number, the inclusion of multiple docket numbers on each notice of appeal does not invalidate the notices of appeal, thereby overruling **Creese**, and declined to quash the appeals.

In this case, Gurley filed two separate Notices of Appeal, one at each docket, and each identifying both docket numbers. Pursuant to **Johnson** and **Larkin**, we conclude that Gurley has complied with the dictates of **Walker** and Pa.R.A.P. 341. Accordingly, we proceed to the merits of Gurley's claims.

Gurley raises the following issues for our review:

I. Was the evidence insufficient to sustain [Gurley's] conviction[, where] the Commonwealth's evidence was so fraught with inconsistencies between the testimony of the Commonwealth witnesses and the crime scene and medical evidence, that a verdict based upon it was inherently unreliable and could amount to no more than surmise or conjecture?

II. Was the jury's [*sic*] verdict against the weight of the evidence[, where] the testimony of all Commonwealth witnesses was fraught with inconsistencies between the testimony of the Commonwealth witnesses and the crime scene and medical evidence?

III. Did the trial court [err] in failing to grant [Gurley's] [M]otion for extraordinary relief and post-sentence [M]otion on the basis of

- 4 -

newly[-]discovered evidence, to wit, the testimony of Hakeem Edwards [("Edwards")] and Sharee Harrison [("Harrison")]?

Brief for Appellant at 3.

In his first issue, Gurley contends that the evidence was insufficient to sustain his convictions. *Id.* at 11. Gurley claims that the Commonwealth's case was "riddled with inconsistencies." *Id.* at 12. Specifically, Gurley points to several aspects of Coley's testimony: (1) Coley testified that Gurley was beaten by multiple men during the fight, but his arrest photo days later showed no visible injuries; (2) Coley testified at trial that he was 5 or 6 feet away from the shooting, while at the preliminary hearing he testified that he was either 10 to 15, or 15 to 20, feet away from the shooting; (3) Coley testified that the shooting occurred on the south side of the street, while ballistic evidence was recovered from the north side of the street; and (4) Coley testified that he was "90 percent sure" that Gurley was the shooter. *Id.* Accordingly, Gurley argues that the evidence presented by the Commonwealth "was so riddled with inconsistencies as to be incapable as a matter of law[,] from supporting a verdict." *Id.*

It is well-settled that "[a]n argument regarding the credibility of a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence." *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014). Nevertheless, in *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993), our Supreme Court observed the following with respect to testimony and sufficiency of the evidence:

Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left to the [finder of fact] and the verdict will not be disturbed if the [finder of fact] determines the evidence is worthy of belief.

We have, however, made exception to the general rule that the [finder of fact] is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.

*Karkaria*, 625 A.2d at 1170.

Here, Gurley implores us to apply the holding in *Karkaria* to the instant case. However, upon review of the record, we do not agree that the verdict was based on conjecture, or that Coley's testimony was so inherently unreliable as to render the verdict unsupportable. As the trial court states in its Opinion,

[i]n the present case, all of the evidence was considered by th[e trial c]ourt as the trier of fact. Th[e trial c]ourt heard testimony from police officers, detectives, one of the shooting victims, and most importantly, an eyewitness to the shooting. Th[e trial c]ourt had the opportunity to observe the demeanor of these witness[es] during their testimony. Specifically, th[e trial c]ourt found the testimony of [] Coley[] to be both credible and compelling. [] Coley testified that he had the opportunity to observe [Gurley] during the initial fight inside and outside the bar, as well as when [Gurley] returned and shot two of the individuals involved in the earlier altercation with him. Th[e trial c]ourt found the testimony of [] Brown and [] Barksdale[] to be less than credible. [] Brown's testimony was inconsistent and lacked trustworthiness. [] Barksdale['s] testimony was more credible[,] but th[e trial c]ourt found her inability to have observed the exact whereabouts of [Gurley] at midnight on July 4, 2015[,] during the time of the shooting[,] to be of great significance. Specifically, her testimony was that she saw [Gurley] in her house at approximately 10:30 p.m. and again at 5:15 a.m. on the night of the shooting, but at no time in between. Th[e trial c]ourt found

that the testimony from the witnesses, together with a ballistics report matching the gun [Gurley] possessed when he was arrested to the gun that was used in the July 4, 2015 shooting, to be compelling and proved beyond any reasonable doubt that [Gurley] was in fact the shooter.

Trial Court Opinion, 8/1/19, at 9-10.[2]

The trial court, as the finder of fact, was free to weigh the evidence presented by the Commonwealth in determining witness credibility. *Cf. Karkaria*, 625 A.2d at 1170 (explaining that the Commonwealth's case was based upon the testimony of a wholly-incredible witness, to the extent that the testimony was completely irreconcilable, and the fact-finder was required to guess which version of the story to believe). Our review of Coley's testimony reveals no basis on which to disturb the trial court's credibility findings on *Karkaria* grounds. Accordingly, we grant Gurley no relief on this claim.

Next, Gurley challenges the weight of the evidence presented against him at trial. Brief for Appellant at 13. Gurley points again to Coley's testimony in support of his weight claim, and argues that the purported inconsistencies in Coley's testimony should shock the conscience of this Court. *Id.* at 14.

_____

[2] Additionally, we note that the trial court, in evaluating Gurley's challenge to the weight of the evidence, stated that, "[a]lthough there were inconsistencies in [Coley's] testimony regarding the exact location of the shooting outside the bar, [] Coley … stated that he was 'ninety percent' certain that [Gurley] was the individual he observed shoot both victims," and found Coley to be "credible and forthright." Trial Court Opinion, 8/1/19, at 11.

We adhere to the following standard of review regarding challenges to the weight of the evidence:

> Before a trial court may award a new trial on the ground that the [verdict is against the weight of the evidence,] it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based upon pure conjecture, these types of claims are not cognizable on appellate review.

**Commonwealth v. Hunter**, 554 A.2d 550, 555 (Pa. Super. 1989) (citation omitted). An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Id.** at 753 (citation omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." **Id.** at 751 (citations omitted).

Here, Gurley did not challenge the weight of the evidence presented at trial at his sentencing hearing, or in his post-sentence Motion. **See generally** Post-Sentence Motion, 5/22/18, at ¶¶ 6-9 (wherein Gurley argues that the Commonwealth failed to present evidence beyond a reasonable doubt that

Gurley was the shooter, maintains his actual innocence, and asserts that it would be "a manifest injustice to sustain [his] conviction"). Accordingly, Gurley's argument that the verdict is against the weight of the evidence is waived. **See** Pa.R.Crim.P. 607(A) (stating that challenges to the weight of the evidence must be raised with the trial court before sentencing or in a post-sentence motion); Pa.R.A.P. 302(a) (stating that issues not raised before the trial court are waived and cannot be raised for the first time on appeal); **Commonwealth v. Sherman**, 982 A.2d 483, 495 (Pa. 2009) (holding that the appellant waived his weight of the evidence claim by not raising it before the trial court).[3]

In his third claim, Gurley argues that the trial court erred when it failed to grant his post-trial Motion for extraordinary relief on the basis of after-discovered evidence. Brief for Appellant at 14. Gurley claims that the testimony of two witnesses, Edwards and Harrison, would likely have altered the result at trial, had they been available to testify. **Id.** at 14-15. Gurley describes their testimony as exculpatory, and argues that their testimony would have proven that he was not the shooter. **Id.** at 14. While Gurley concedes that he was aware that Edwards and Harrison had given statements

_____

[3] We note that, even if Gurley had properly preserved this issue for our review, we would conclude that it lacks merit for the reasons stated in the Opinion of the trial court. **See** Trial Court Opinion, 8/1/19, at 10-13 (concluding that Gurley's weight claim was without merit because it found Coley's testimony to be credible, and the ballistic evidence matched the firearm seized from Gurley to the firearm used in the shooting).

to the police shortly after the shooting and, thus, could have served as trial witnesses, Gurley indicates that he was unaware that they "would subsequently contradict their earlier statements … and state that [Gurley] was not the instigator of the fight or the shooter[.]" *Id.*  As a result, Gurley argues that he deserves a new trial, in order for Edwards and Harrison to be able to testify.  *Id.* at 15.  Alternatively, Gurley argues that even if Edwards and Harrison's testimony failed to meet the criteria for an after-discovered evidence claim, the trial court should have nevertheless granted him a new trial to prevent a "miscarriage of justice." *Id.*

Pennsylvania Rule of Criminal Procedure 720, relating to post-sentence procedures and appeal, provides in pertinent part, as follows:  "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery."  Pa.R.Crim.P. 720(C). The Comment to Rule 720 states as follows:

> [A]fter-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after[-]discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge.

Pa.R.Crim.P. 720, Cmt.

As noted above, the after-discovered evidence at issue here was discovered and raised after trial, but before sentencing.  Accordingly, Gurley's argument was raised properly before the trial court, and we may address the merits of this issue.

To obtain relief based on after-discovered evidence, an appellant must demonstrate that "[t]he evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." **Commonwealth v. Castro**, 93 A.2d 818, 821 n.7 (Pa. 2014) (citing **Commonwealth v. Pagan**, 950 A.2d 270, 292 (Pa. 2008). "As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones." **Commonwealth v. Solano**, 129 A.3d 1156, 1180 (Pa. 2015) (citing **Pagan**, 950 A.2d at 292-93). "Unless there has been a clear abuse of discretion, an appellate court will not disturb the trial court's denial of an appellant's motion for a new trial based on after-discovered evidence." **Commonwealth v. Chamberlain**, 30 A.3d 381, 416 (Pa. 2011). Finally, "the proposed new evidence must be producible and admissible." **Id.** at 414 (internal quotations and citation omitted).

Here, the trial court conducted a hearing regarding Gurley's post-trial Motion on December 11, 2017, and February 26, 2018. At the hearing, the trial court heard testimony from Edwards, Harrison, and Detective Glen MacClain ("Detective MacClain"). Edwards testified that on July 4, 2015, he was shot by an individual with a t-shirt tied around his head, whom he could not identify. N.T. (Post-Trial Hearing), 12/11/17, at 24. He testified that he had arrived at the bar shortly before the shooting, but after the fight. **Id.** at

24-25. He knew Gurley from other visits to the bar and from the neighborhood, but did not see Gurley on the night of the shooting. *Id.* at 25, 27. After the shooting, Edwards provided a statement to police and was shown a photo array, but he did not identify Gurley as the shooter. *Id.* at 26-27. Edwards stated that he had communicated with the Commonwealth prior to trial that he believed Gurley was not the shooter, and that he did not feel that there was a need for him to testify at Gurley's trial. *Id.* at 28. Edwards testified that he did not believe that he was the intended target of the shooting, and that Gurley was the shooter because "[we had] never been through anything. I had a feeling it wasn't him and he wouldn't do that to me." *Id.* at 29, 31. Edwards also denied saying to police in his statement, "[Gurley] is the guy I saw [on] Instagram as [`]Kill36.[']  Somebody told me he was shot by him." *Id.* at 35. However, on the day of Gurley's trial, Edwards overslept and did not appear. *Id.* at 28-29.

Detective MacClain testified that he administered the photo array to Edwards after the shooting. *Id.* at 30-35. He testified that, upon showing Edwards Gurley's photograph, Edwards stated, "[Gurley is] the guy I saw [on] Instagram as [`]Kill36.[']  Somebody told me he was shot by him." *Id.* at 33.

Harrison testified that he was present at the Eagle Bar on the night of the shooting. N.T. (Post-Trial), 2/26/18, at 5. He had gotten into an altercation with an unidentified individual inside the bar, but left the area because he was too intoxicated to participate in a fight and did not witness

the shooting. *Id.* at 6, 12. Harrison testified that he was familiar with Gurley from the neighborhood. *Id.* at 7. After the shooting, he was shown a photo array by police, and he did not identify Gurley as the person with whom he had the altercation inside the bar. *Id.* Harrison provided a statement to police, which he then refused to sign. *Id.* at 15. Harrison was in prison during Gurley's trial, but he was unaware that the trial was occurring. *Id.* at 9.

The trial court, as the sole finder of fact in Gurley's bench trial, stated in its Opinion that the testimony of Edwards and Harrison would not have upset its verdict. Trial Court Opinion, 8/1/19, at 16. The trial court specifically determined that their testimony was not credible, especially in light of Coley's credible testimony and identification of Gurley as the shooter. *Id.* We do not discern an abuse of discretion in the trial court's conclusion that the testimony of Edwards and Harrison would not have altered its guilty verdict. Accordingly, Gurley's after-discovered evidence argument fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20

- 13 -